UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HERITAGE GUITAR, INC.,                    Case No.

      Plaintiff,                              Honorable

v.

GIBSON BRANDS, INC.,

      Defendant.

---

Bryan R. Walters (P58050)
VARNUM, LLP
Attorneys for Plaintiff
333 Bridge Street, N.W., Suite 1700
Grand Rapids, MI  49504
(616) 336-6000
brwalters@varnumlaw.com

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Heritage Guitars, Inc. ("Heritage"), by its undersigned counsel, brings this action against Defendant Gibson Brands, Inc. ("Gibson") and alleges as follows:

### NATURE OF THE ACTION

1.      In the early 1980s, Gibson Brands, Inc. ("Gibson") decided to close its historic 225 Parsons Street factory in Kalamazoo, Michigan.  Some 225 Parsons Street employees did not want to move their homes and families to Tennessee, and in 1985 formed a new company, Heritage Guitars, Inc. ("Heritage"), to carry on the tradition of hand-crafted guitar-making that started at Parsons Street in 1917.  They purchased space at the abandoned factory and bought some old Gibson equipment that was sold at an auction.  Over the ensuing thirty-five years, Heritage has become known as one of the world's foremost guitar manufacturers, focusing on

hand-crafted attention to detail and moving away from the cost-cutting techniques that ultimately caused Gibson to close the factory.

2.     Not surprisingly, there was an early clash between Gibson and Heritage over Gibson's claims to own the "look" of certain guitar designs, and litigation ensued in both federal court and before the U.S. Trademark Trial & Appeal Board.  Ultimately, that litigation was resolved in 1991.  For the ensuing twenty-nine years, Heritage and Gibson went their separate ways, each selling its own well-known guitars into the market, with no problems or issues.

3.     Peace between these companies ended when Gibson went bankrupt and its assets were purchased by a New York-based $150 billion hedge fund, Kolberg Kravis & Roberts ("KKR").  Now Gibson, via KKR, seeks to undo the resolution achieved in 1991 and followed by both parties for twenty-nine years, by claiming phantom breaches of the 1991 settlement by Heritage.  Indeed, Gibson has explicitly threatened to sue Heritage in the United States District Court for the Central District of California, a venue unrelated to either company's businesses in Nashville (Gibson) and Kalamazoo (Heritage), presumably because of a prior unfavorable trademark decision by the United States Court of Appeals for the Sixth Circuit.  Heritage brings this action to resolve the cloud of fear, uncertainty and doubt that Gibson and KKR seek to cast over Heritage's business by these ill-conceived threats.

4.     More particularly, this action arises out of the settlement agreement that Gibson and Heritage entered into on August 29, 1991 (the "Settlement Agreement") to resolve the trademark dispute then existing between the parties relating to guitar designs.  ███████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

5.      Heritage complied with all terms of the Settlement Agreement.  Indeed, ***for nearly twenty-eight years,*** from 1991 to 2019, Gibson never claimed that Heritage failed to meet its obligations under the Settlement Agreement, or that any Heritage guitars infringed Gibson's intellectual property rights.  In February 2019, shortly after KKR took over Gibson, Gibson wrote to Heritage and essentially claimed that Heritage had been violating the Settlement Agreement for decades.  Gibson demanded that Heritage essentially cease its business as the only solution that Gibson would accept.  Heritage pointed out that its designs remained substantially unchanged, and any minor modifications to elements not at issue in the 1991 Settlement Agreement indisputably resulted in the designs being further from Gibson's designs in the Settlement Agreement than the approved models.  Heritage thus confirmed that it complied in all respects with the Settlement Agreement, and it refused to accede to Gibson's demand that it cease virtually its entire business.

6.      Recognizing the lack of merit in its claims, Gibson fell silent again for the next several months.  In February 20, 2020, however, Gibson wrote to Heritage claiming different alleged violations of the Settlement Agreement, infringement of its intellectual property rights, and threatening to take legal action – indeed, attaching a draft complaint.

7.      None of Gibson's evolving legal theories have merit, and Heritage remains, and has always been, in full compliance with the Settlement Agreement.  Nevertheless, to resolve the uncertainty created by Gibson's threats and allegations, Heritage has been left with no choice but

to file this action seeking the following relief:  (1) a declaratory judgment that Heritage has not breached the Settlement Agreement; (2) a declaratory judgment that Heritage has not infringed, and is not infringing, U.S. Registration No. 1782606 (the "'606 Mark") or U.S. Registration No. 2007277 (the "'277 Mark") (collectively, the "Asserted Trademarks"); (3) a declaratory judgment that Heritage has not diluted, and is not diluting, the Asserted Marks; (4) a declaratory judgment that the Asserted Marks are invalid; (5) cancellation of the Asserted Marks; (6) a declaratory judgment that the Asserted Marks are unenforceable as to Heritage due to laches; and (7) a declaratory judgment that Gibson's claims are barred by waiver, estoppel, and acquiescence.

## PARTIES

8.     Heritage is a corporation organized and existing under the laws of the state of Michigan, with its principal place of business at 225 Parsons Street, Kalamazoo, Michigan 49007.

9.     Upon information and belief, Gibson is a Delaware corporation with its principal place of business at 309 Plus Park Boulevard, Nashville, Tennessee 37217.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction because this action arises under the trademark laws of the United States, 15 U.S.C. § 1125(a), *et seq.* and thus presents a federal question (28 U.S.C. § 1331) and one in which exclusive jurisdiction exists in federal court (28 U.S.C. § 1338).

11.     This Court has personal jurisdiction over Defendant because Defendant purposefully directed its activities at Heritage, a resident of the state of Michigan, and this Complaint arises out of those activities.  Gibson entered into the Settlement Agreement with

Heritage, which imposed enforcement obligations on Heritage in this State.  In addition, Gibson has had multiple communications with Heritage in this State, including cease and desist communications sent to Heritage's facility in Michigan.  Further, as described further below, Gibson has made threats with respect to Heritage's business operations in Michigan.  This Court also has personal jurisdiction over Defendant because it maintains continuous and systematic contacts with the forum such that the exercise of jurisdiction over it would not offend traditional notions of fair play and substantial justice.  This Court has also personal jurisdiction over Gibson under the Michigan "long-arm" statute, because Gibson is a corporation that carries on a continuous and systematic part of its general business within the State of Michigan.  MCL 600.711(3).

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) and (c).

## FACTUAL ALLEGATIONS

**I.    Heritage Guitar, Inc.**

13.    Founded in 1985, Heritage is one of the world's premier musical instrument manufacturers.  Heritage sells guitar models from its Standard Collection, Artisan Aged Collection, and Custom Shop Collection.  The Standard Collection includes the H-137, H-150, H-530, H-535, H-575, and the Eagle Classic models.

14.    Heritage guitars received rave reviews for "excellent build quality and superb performance" (guitarplayer.com), as "irresistible" and "truly impressive" (Guitar World).  As a review of one of its guitars stated, "Heritage gets it spectacularly right where it matters" (guitar.com).  Among other awards, the Heritage H-150 was awarded the coveted Platinum Award for Excellence by Guitar World.

15.    Heritage Standard Collection guitars combine classic design, modern touches, and the finest materials, for an unparalleled quality, style and playability that is sought after by musicians around the world.  Indeed, Heritage guitars have been used and endorsed by numerous well-known musicians, including Grammy Award winner Kenny Burrell, country musician Roy Clark, jazz guitarist Henry Johnson, and two-time Grammy nominee David Becker.

**II.    The 1991 Settlement Agreement**

16.    In 1990, Gibson sued Heritage alleging infringement of certain claimed trademark rights.  *Gibson Guitar Corp. v. Heritage Guitar, Inc. and Lasar Music Corp.*, Civil Action No. 3-90-0009 (M.D. Tenn.) (the "Lawsuit").  In particular, Gibson accused, *inter alia*, Heritage's H-150 series, H-535, H-555, H-575, H-576, Super Eagle, Eagle TDC, and H-357 models.  Heritage denied any alleged infringement.

17.     Images of the accused Heritage models are shown below:



18.     On August 29, 1991, Heritage and Gibson entered into the Settlement Agreement to resolve the Lawsuit.

19.     ██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████

20.    At the time the parties signed the Settlement Agreement, Heritage was selling

"single-cut" and "double-cut" guitars. ████████████████████████████████

████████████████████████████████████████ Accordingly,

Heritage has continued to use single-cut and double-cut guitar designs after 1991, just as it had

done beforehand.

21.    In particular, the H-150 Deluxe model ████████████████████████████

██████████ had a "single-cut" design.



H-150 Deluxe

Single-cut design

22.    Other Heritage models ████████████████████████████████

having a single-cut design included the American Eagle, Golden Eagle, Super Eagle, Eagle TDC,

Eagle, Sweet 16, H-574, H-550, H-575, H-576, H-147, H-140CM, H-150CM, H-157, H-357,

Sae Cutaway, and the H-480.

23.    Similarly, the H-535 model ██████████████████████████████

██████████ had a "double-cut" design.



24.    Other Heritage models ████████████████████████████ having a double-cut design included the H-555, STAT, and HB-2 Bass.

## III.    Gibson Goes Bankrupt

25.    In May 2018, Gibson filed for Chapter 11 bankruptcy protection with roughly $500 million in debt.

26.    In October 2018, a United States bankruptcy court in Delaware approved Gibson's reorganization plan, which allowed Gibson to exit bankruptcy and keep itself in business.  On November 1, the investment firm Kohlberg Kravis Roberts & Co. assumed majority ownership control of Gibson.

## IV.    Gibson's Cease and Desist Demands

27.    On February 6, 2019, Gibson sent a letter accusing Heritage of infringing the Asserted Trademarks and breaching the Settlement Agreement.  Gibson demanded that Heritage: (1) immediately cease use of the Asserted Trademarks, or any marks confusingly similar to the Asserted Trademarks; and (2) rescind and refrain from any further advertisements bearing the Asserted Trademarks or any mark confusingly similar to the Asserted Trademarks. In particular, Gibson claimed that Heritage was in breach of the 1991 Settlement Agreement regarding its

supposed unauthorized use of Gibson's Les Paul Body Shape Design and ES Body Shape Design.

28.     On May 1, 2019, Heritage responded.  Heritage denied that it infringed upon the Asserted Trademarks or that it breached the Settlement Agreement.  Heritage made the following observations:  (1) the H-150 Family Models are readily distinguishable from Gibson's Les Paul design; (2) Heritage was unaware of any actual confusion caused by the H-150 Family Models or the H-535 Family Models; (3) the H-150 Family Models are identical to the body design ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

29.     Shortly thereafter, Heritage and Gibson had a telephone meeting to discuss Gibson's allegations and Heritage's response.  At this meeting, among other things, Gibson demanded that Heritage cease sale of most of its guitars – essentially, Gibson sought to put Heritage out of business – and threatened to outspend Heritage if it did not accept Gibson's demands.  In spite of Gibson's threats, Heritage refused, citing the Settlement Agreement.

30.     Apparently recognizing the weakness of its claims, Gibson dropped the matter and Heritage heard nothing further for months.

31.     In November 2019, Gibson contacted Heritage, ostensibly to discuss a proposed collaboration relating to the redevelopment of the 225 Parsons Street building.  However, Gibson conditioned its participation in the project on cessation of operations by Heritage.  When Heritage again refused, Gibson responded that it would be sending a cease and desist letter.

32.     Three months later, on February 20, 2020, Gibson wrote to Heritage, again accusing Heritage of infringing the Asserted Trademarks.  Gibson threatened imminent litigation, including a draft complaint.

33.     Gibson's February 20 Letter claims that the design of four Heritage guitars infringes the Asserted Trademarks and violates the terms of the Settlement Agreement. Specifically, Gibson claims that: ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████

34.     First, Gibson's February 20 Letter claims that the design of the four Heritage guitars "infringe on Gibson's Les Paul Body Shape Design Trademark and Gibson's ES Body Shape Design Trademark."  However, ████████████████████████████████ prior to the time of settlement, Heritage sold many guitars that included single-cut and double-cut body design. ████████████████████████████████████████ indeed Heritage's single-cut and double-cut body designs also have been continuously used in the twenty-nine years since the Settlement Agreement was signed, with no objection from Gibson until last year.

35.     ████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████

36. ████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

██████

37. ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████



A·4          A5          A6          A·7

38.     Only two Heritage guitar models identified in Gibson's February 20 Letter use P-90 pickups, and both are branded P-90 pickups made by a well-known manufacturer other than Gibson.  Specifically, the Heritage H-137 and H-530 guitars use P-90 pickups branded by Lollar. As noted on Lollar's website, Jason Lollar has "designed and built some of the most sought-after pickups for electric guitar."  Indeed, Jason Lollar literally wrote the book on pickups, *Basic Pickup Winding and Complete Guide to Making Your Own Pickup Winder*, now in its third

edition.  As a matter of law and common sense, it defies reality to suggest that changing these

two Heritage's guitars to remove Humbucker pickups (used by Gibson ███████████████████

███████████████, and to replace them with P90 pickups ███████████████████

███████████████████████████████ can somehow make Heritage's guitars

███████████████████████████ Accordingly, there is no basis to claim ███████

███████████████████ a violation of Gibson's intellectual property rights based on

Heritage's substitution of P-90 pickups for Humbucker pickups.

     39.     Third, Gibson's February 20 Letter misidentifies the Heritage models which it

compares on page 3 of its Letter, and suggests that the guitars are the same:



They are not the same guitar.  The image on the left is the Heritage H-147.  ███████████

███████████████████████████████████████████████████████████████

███████████████████ The picture on the right is the Heritage H-137.  Contrary to

Gibson's Letter, the H-137 – introduced by Heritage in 2009, more than ten years ago – has

never had a pickguard, ███████████████████████████ As noted above,

the H-137 has always had Lollar P-90 pickups, which are different from the Humbuckers used by

Gibson and thus render the design more different from Gibson's designs and guitar-related

designs ███████████████████████████████████

40. In sum, contrary to Gibson's assertions, Heritage remains fully compliant with the Settlement Agreement, and accordingly, Heritage is not infringing any Gibson intellectual property rights.

## COUNT I

**(Declaratory Judgment that Heritage Has Not Breached the 1991 Settlement Agreement)**

41. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

42. An actual, justiciable, and continuing case or controversy exists between Plaintiff and Gibson regarding Heritage's compliance with the terms of the Settlement Agreement.

43. Gibson has alleged that certain Heritage products violate the terms of the Settlement Agreement.

44. Heritage denies Gibson's allegations ███████████████████████

███████████████████████████████████████████████████████████

████████████████████████

45. Plaintiff is therefore entitled to a judicial declaration that it is not in breach of the Settlement Agreement.

## COUNT II

**(Declaratory Judgment of Non-Infringement of the '606 Mark)**

46. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

47. An actual, justiciable, and continuing case or controversy exists between Plaintiff and Gibson regarding alleged infringement of the '606 Mark. Gibson has accused Heritage of having infringed and infringing the '606 Mark. Heritage denies the allegations.

14

48.     There is no likelihood of confusion, mistake or deception as to the affiliation, connection, or association of Gibson with Heritage or as to the origin, sponsorship, or approval of the parties' respective products.

49.     Plaintiff is therefore entitled to a judicial declaration that Heritage:  (a) has not infringed, and is not infringing, the '606 Mark pursuant to 15 U.S.C. § 1114(1); (b) has not engaged in, and is not engaging in counterfeiting, of the '606 Mark pursuant to 15 U.S.C. § 1114(1); and (c) has not engaged in, and is not engaging in, false designation of origin or unfair competition with respect to the '606 Mark pursuant to 15 U.S.C. § 1125(a).

## COUNT III

### (Declaratory Judgment of No Dilution of the '606 Mark)

50.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

51.     The '606 Mark is not distinctive.

52.     The '606 Mark was not famous at the time Heritage began using the single-cut design on its guitars.

53.     There is no likelihood of dilution by blurring or by tarnishment as a result of Heritage's continued use of the single-cut design on its guitars.

54.     Plaintiff is therefore entitled to a judicial declaration that Heritage has not diluted, and is not diluting, the '606 Mark pursuant to 15 U.S.C. § 1125(c).

## COUNT IV

### (Declaratory Judgment of Invalidity and Unenforceability of the '606 Mark)

55.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

15

56.     The '606 Mark is invalid because the single-cut body shape that the '606 Mark purports to cover has become a generic design for guitars since 1991.

57.     Plaintiff is therefore entitled to a judicial declaration that Gibson has no valid or enforceable rights with respect to the '606 Mark.

## COUNT V

**(Declaratory Judgment of Non-Infringement of the '277 Mark)**

58.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

59.     An actual, justiciable, and continuing case or controversy exists between Plaintiff and Gibson regarding alleged infringement of the '277 Mark.  Gibson has accused Heritage of having infringed and infringing the '277 Mark.  Heritage denies the allegations.

60.     There is no likelihood of confusion, mistake or deception as to the affiliation, connection, or association of Gibson with Heritage or as to the origin, sponsorship, or approval of the parties' respective products.

61.     Plaintiff is therefore entitled to a judicial declaration that Heritage:  (a) has not infringed, and is not infringing, the '277 Mark pursuant to 15 U.S.C. § 1114(1); (b) has not engaged in, and is not engaging in counterfeiting, of the '277 Mark pursuant to 15 U.S.C. § 1114(1); and (c) has not engaged in, and is not engaging in, false designation of origin or unfair competition with respect to the '277 Mark pursuant to 15 U.S.C. § 1125(a).

## COUNT VI

**(Declaratory Judgment of No Dilution of the '277 Mark)**

62.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

63.     The '277 Mark is not distinctive.

64.     The '277 Mark was not famous at the time Heritage began using the single-cut design on its guitars.

65.     There is no likelihood of dilution by blurring or by tarnishment as a result of Heritage's continued use of the single-cut design on its guitars.

66.     Plaintiff is therefore entitled to a judicial declaration that Heritage has not diluted, and is not diluting, the '277 Mark pursuant to 15 U.S.C. § 1125(c).

<u>COUNT VII</u>

**(Declaratory Judgment of Invalidity and Unenforceability of the '277 Mark)**

67.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

68.     The '277 Mark is a simple design consisting of a configuration of a guitar body which is not inherently distinctive and therefore is only protectable upon a showing of acquired distinctiveness.

69.     The double-cut body shape that the '277 Mark purports to cover has not acquired distinctiveness such that it indicates the source of Gibson's goods and distinguishes those goods from those sold by any other guitar companies.

70.     Further, the double-cut body shape is functional in that it is essential to the use or performance of the guitars on which it appears and/or it affects the cost or quality of those guitars, and thus it is not protectable as a trademark.

71.     The '277 Mark is invalid because the double-cut body shape which the '277 Mark purports to cover has become a generic design for guitars since 1991.

72.     Plaintiff is therefore entitled to a judicial declaration that Gibson has no valid or enforceable rights with respect to the '277 Mark.

## COUNT VIII

### (Cancellation of Registrations)

73.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

74.     Heritage will be damaged by the continued registration of the Asserted Trademarks.

75.     Therefore, in accordance with the Lanham Act, 15 U.S.C. § 1119, Registrations Nos. 1782606 and 2007277 should be cancelled.

## COUNT IX

### (Declaratory Judgment of Unenforceability of the Asserted Trademarks Due to Laches)

76.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

77.     The parties' 1991 Settlement Agreement purported to resolve the disputes existing between the parties at that time █████████████████████████████████ ████████████████████████████████

78.     At the time the parties signed the Settlement Agreement, Heritage was selling "single-cut" and "double-cut" guitars. █████████████████████████████ ████████████████████████████████████ Accordingly, Heritage continued to use single-cut and double-cut guitar designs after execution of the 1991 Settlement Agreement.

79.     For more than two decades after execution of the Settlement Agreement, Gibson made no allegation that Heritage was in breach of the Settlement Agreement and raised no objection to Heritage's sale of single-cut or double-cut guitar designs.

80.     The first time Gibson purports to have made any claims concerning the single-cut or double-cut designs was in 2015.  Heritage has no record of having received a letter from Gibson in 2015.  Regardless, but for the one letter, Gibson took no further action at that time.

81.     Gibson then waited another four years, until 2019, to raise any objections to Heritage's guitar designs.  After the parties reached an impasse in the summer of 2019, however, Gibson again fell silent and took no further action until sending its latest communication in February 2020, attaching a draft complaint alleging breach of the Settlement Agreement and infringement of the Asserted Marks.

82.     Gibson's delay in bringing its claims against Heritage is unreasonable, especially in light of the Michigan breach of contract statute of limitations, which is six years, or the Michigan statute of limitations for trademark infringement, which is three years.

83.     Heritage has suffered both economic and evidentiary prejudice due to Gibson's delay.  Heritage has continued to conduct its business by manufacturing, branding, and selling its guitars to customers under the belief that it was not infringing Gibson's Asserted Trademarks.  In addition, as a result of Gibson's delay, Heritage no longer has access to documents and testimony relevant to Gibson's claims.

84.     Heritage is thus entitled to a declaratory judgment that laches precludes Gibson from (a) alleging breach of the Settlement Agreement based on Heritage's sale of single-cut and double-cut guitar designs and (b) enforcing the Asserted Marks against Heritage.

## COUNT X

### (Estoppel)

85.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

86.     As set forth above, the parties' 1991 Settlement Agreement purported to resolve the disputes existing between the parties at that time ███████████████████████ ████████████████████████████████████

87.     Heritage was selling "single-cut" and "double-cut" guitar designs at the time of the 1991 Settlement Agreement. ██████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████

88.     For more than two decades after execution of the Settlement Agreement, Gibson made no allegation that Heritage was in breach of the Settlement Agreement and raised no objection to Heritage's sale of single-cut or double-cut guitar designs.

89.     Gibson's allegations concerning certain Heritage models currently on the market are inconsistent with its representations set forth in the Settlement Agreement and with its silence over the course of the ensuing two decades concerning Heritage's sale of guitars having a single-cut or double-cut design.

90.     Heritage relied on Gibson's representations and inaction to its detriment.  In reliance on Gibson's representations and inaction, Heritage has continued to conduct its business by manufacturing, branding, and selling guitars having single-cut and double-cut designs to

customers under the belief that those designs were non-infringing and complied with the Settlement Agreement.

91.     Heritage is thus entitled to a declaratory judgment that Gibson is estopped from (a) alleging breach of the Settlement Agreement based on Heritage's sale of single-cut and double-cut guitar designs and (b) enforcing the Asserted Marks against Heritage.

## COUNT XI

### (Acquiescence)

92.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

93.     As set forth above, the parties' 1991 Settlement Agreement purported to resolve the disputes existing between the parties at that time ████████████████████████ ████████████████████████████████████████████████

94.     As further set forth above, Heritage was selling "single-cut" and "double-cut" guitar designs at the time of the 1991 Settlement Agreement. ████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████

95.     For more than two decades after execution of the Settlement Agreement, Gibson made no allegation that Heritage was in breach of the Settlement Agreement and raised no objection to Heritage's sale of single-cut or double-cut guitar designs.

96.     Gibson's more than two-decade delay in asserting either a breach of the Settlement Agreement or infringement of the Asserted Marks by Heritage's single-cut and double-cut guitar designs is not excusable.

21

97.     Heritage has been prejudiced as a result of Gibson's delay.  Heritage has continued to conduct its business by manufacturing, branding, and selling its guitars to customers under the belief that it was not infringing Gibson's Asserted Trademarks.  In addition, as a result of Gibson's delay, Heritage no longer has access to documents and testimony relevant to Gibson's claims.

98.     Heritage is thus entitled to a declaratory judgment that Gibson's contract and trademark claims are barred by the doctrine of acquiescence.

## COUNT XII

### (Waiver)

99.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

100.     As set forth above, Heritage was selling "single-cut" and "double-cut" guitar designs at the time of the 1991 Settlement Agreement.  ██████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████

101.     ██████████████████████████████████████ coupled with its failure to allege infringement of the Asserted Marks by Heritage's guitars for more than two decades after the Settlement Agreement was signed, Gibson has waived any rights it has to enforce the Asserted Marks against Heritage.

102.     Heritage is thus entitled to a declaratory judgment that Gibson's contract and trademark claims are barred by waiver.

22

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.      A declaration that Heritage has not breached the Settlement Agreement.

B.      A declaration that Heritage (a) has not infringed, and is not infringing, the '606 Mark pursuant to 15 U.S.C. § 1114(1); (b) has not engaged in, and is not engaging in counterfeiting, of the '606 Mark pursuant to 15 U.S.C. § 1114(1); and (c) has not engaged in, and is not engaging in, false designation of origin or unfair competition with respect to the '606 Mark pursuant to 15 U.S.C. § 1125(a).

C.      A declaration that Heritage has not diluted, and is not diluting the '606 Mark pursuant to § 1125(c).

D.      A declaration that Gibson has no valid or enforceable rights with respect to the '606 Mark.

E.      A declaration that Heritage (a) has not infringed, and is not infringing, the '277 Mark pursuant to 15 U.S.C. § 1114(1); (b) has not engaged in, and is not engaging in counterfeiting, of the '277 Mark pursuant to 15 U.S.C. § 1114(1); and (c) has not engaged in, and is not engaging in, false designation of origin or unfair competition with respect to the '277 Mark pursuant to 15 U.S.C. § 1125(a).

F.      A declaration that Heritage has not diluted, and is not diluting the '277 Mark pursuant to § 1125(c).

G.      A declaration that Gibson has no valid or enforceable rights with respect to the '277 Mark.

H.      An order directing the United States Patent and Trademark Office to cancel U.S. Trademark Registration Nos. 1782606 and 2007277.

I.      A declaration that laches bars Gibson from (a) alleging breach of the Settlement Agreement based on Heritage's sale of single-cut and double-cut guitar designs and (b) enforcing the Asserted Marks against Heritage.

J.      A declaration that Gibson is estopped from (a) alleging breach of the Settlement Agreement based on Heritage's sale of single-cut and double-cut guitar designs and (b) enforcing the Asserted Marks against Heritage.

K.      A declaration that Gibson's claims for breach of the Settlement Agreement infringement of the Asserted Marks based on Heritage's sale of single-cut and double-cut guitar designs are barred by the doctrine of acquiescence.

L.      A declaration that Gibson's claims for breach of the Settlement Agreement infringement of the Asserted Marks based on Heritage's sale of single-cut and double-cut guitar designs are barred by waiver.

M.      Awarding any other remedy or relief to which Plaintiff may be entitled and which is deemed appropriate by the Court.

## JURY DEMAND

Plaintiff hereby requests a trial by jury for all eligible counts contained within this Complaint.

Respectfully submitted,

VARNUM
Attorneys for Plaintiffs

Dated:  March 13, 2020          By:   /s/ Bryan R. Walters
                                        Bryan R. Walters (P58050)
                               Business Address, Telephone, and E-mail:
                                        P.O. Box 352
                                        Grand Rapids, MI  49501-0352
                                        616/336-6000
                                        brwalters@varnumlaw.com

                               and

                               Mark G. Matuschak (admission pending)
                               Vinita Ferrera (admission pending)
                               WILMER CUTLER PICKERING HALE AND DORR LLP
                               60 State Street
                               Boston, MA  02109
                               (617) 526-6559 (t)
                               (617) 526-5000 (f)
                               Mark.matuschak@wilmerhale.com

                               Jared D. Hoffman (admission pending)
                               WILMER CUTLER PICKERING HALE AND DORR LLP
                               7 World Trade Center
                               250 Greenwich Street
                               New York, NY  10007