IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| HERITAGE GUITAR, INC., | ) |
| Plaintiff, | ) |
| | ) Case No. 20-cv-229 |
| vs. | ) |
| | ) Honorable Janet T. Neff |
| GIBSON BRANDS, INC., | ) |
| | ) Magistrate Judge Ray Kent |
| Defendant. | ) |
| | ) |

**DEFENDANT'S OPPOSITION TO MOTION TO SEAL**

Defendant Gibson Brands, Inc. ("Gibson") hereby makes a special appearance to file its Opposition to Plaintiff Heritage Guitars, Inc.'s ("Heritage") Motion for Order that Its Complaint May be Filed in The Public Record without Redactions or, Alternatively, for Leave to File Its Complaint Under Seal.  Gibson makes this special appearance only, as it intends to file a Motion to Dismiss or, alternatively, a Motion to Transfer this Case to the Middle District of Tennessee.  For the reasons addressed below, Gibson Opposes Heritage's request to unseal portions of the Complaint, but Gibson does not oppose Heritage's alternative request to keep portions of the Complaint sealed[1].

I.       INTRODUCTION.

On the day the President declared a National Emergency due to the Coronavirus pandemic, Heritage filed its premature Declaratory Judgment Action **late that Friday night** on March 13, 2020, against Gibson.  [*See* Doc. No. 1.].  Meng Ru Kuok, the son of the Singaporean billionaire Kuok

---

[1] In fact, Gibson has requested that Heritage make further redactions to Paragraph 38 of the Complaint that references the terms of the parties' Confidential Settlement Agreement, and Gibson may bring that matter to the Court's attention if it is unable to resolve the issue with Heritage.

Khoon Hong[2], holds an ownership interests in Heritage as well as the online guitar publication www.guitar.com.

Over the March 13th weekend, while Gibson and the rest of the country tried to come to grips with the pandemic, Heritage, by and through Meng Ru Kuok, used its online publication company, www.guitar.com, to launch a negative PR campaign against Gibson. https://guitar.com/news/gibson-sued-by-heritage/ ("*Guitar.com* has obtained a redacted legal document filed on 13 March 2020 in the US District Court for the Western District of Michigan Southern Division, which details a previously confidential agreement reached between the two companies in August 1991, effectively giving Heritage Gibson's blessing to continue making its guitars."); https://www.guitarworld.com/news/gibson-sued-by-heritage-guitars-over-alleged-trademark-threats ("Guitar.com claims it has seen redacted versions of the 1991 documents that 'effectively giv[e] Heritage Gibson's blessing to continue making its guitars.'")

Meanwhile, Governor Gretchen Whitmer declared a State of Emergency in Michigan on March 10, 2020[3]. The day before, Governor Bill Lee declared a State of Emergency in Tennessee.[4] The United States District Court of the Western District of Michigan took similar action to protect the public, issuing Administrative Order 20-MS-024 entitled "In re: Modification of Court Operations in Response to COVID-19" that, among other things, closed public access to the Federal Courthouses in Kalamazoo and Lansing.[5] Just emerging from a deadly tornado that destroyed much of the Nashville area, Gibson had to shut down its corporate office in Nashville, Tennessee to comply with

---

[2] https://en.wikipedia.org/wiki/Kuok_Khoon_Hong; https://www.bloomberg.com/news/articles/2016-08-25/billionaire-s-28-year-old-son-picks-digital-music-empire-over-palm-oil-riches
[3] https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-521576--,00.html
[4] https://www.tn.gov/governor/news/2020/3/12/gov--bill-lee-issues-executive-order-declaring-state-of-emergency-in-response-to-covid-19.html
[5] https://www.miwd.uscourts.gov/sites/miwd/files/Admin%20Order%2020-MS-024.pdf

2

social distancing mandates.  A record 3.3 million Americans filed for unemployment during the week of March 16th as a result of the pandemic.[6]  State and local governments throughout the country have ordered their citizens to shelter-in-place.[7]

Now, in the midst of this National and Global pandemic, Heritage demands that Gibson and the Court turn their attention to Heritage's non-emergency request to unseal portions of its Complaint that reference the terms of the *Confidential* 1991 Settlement Agreement between Gibson and Heritage. [*See* Plaintiff's Motion for Order that its Complaint may be filed in the Public Record without Redactions or, Alternatively, for Leave to File its Complaint Under Seal at Doc. No. 6.]  As of the time of filing the Non-Emergency Motion to Unseal, Gibson has not even made an appearance in this case; it executed a Waiver of Service and its Responsive Pleading is not due until Monday, May 18th. [*See* Waiver of Service of Doc. No. 5.].  As the Response to the Non-Emergency Motion to Unseal is due much earlier on April 8, 2020, Gibson has had to redirect its resources and energy to respond to the Non-Emergency Motion to Unseal.  The Non-Emergency Motion to Unseal also unnecessarily tasks the Court's limited judicial resources during this National and Global Emergency.

It appears the only reason Heritage filed the Non-Emergency Motion to Unseal is so it can disseminate more information through its related media company www.guitar.com to further Heritage's negative PR campaign.  For example, even before Gibson has made an appearance or responded to the Non-Emergency Motion to Unseal, Heritage has already disseminated the filing to its related media company www.guitar.com to further Heritage's negative PR campaign against Gibson.  *See* https://guitar.com/news/gibson-and-heritage-clash-over-redacted-court-filing/ ("The legal fight between Gibson and Heritage has taken a fresh twist, as a dispute over how much of the

---

[6] https://www.washingtonpost.com/business/2020/03/26/unemployment-claims-coronavirus-3-million/
[7] https://www.nytimes.com/interactive/2020/us/coronavirus-stay-at-home-order.html

original redacted legal suit should be released to the public has led to a fresh filing from Heritage, demanding that the court grants its wish to release the original document without anything redacted for confidentiality reasons.")

The filing calls to mind the sage words of Elihu Root: "About half the practice of a decent lawyer is telling would-be clients that they are damned fools and should stop." *See Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1202 (7th Cir. 1987) (quoting 1 Jessup, Elihu Root 133 (1938); *see also* March 18, 2020 Order from *Art Ask Agency v. The Individuals, etc.*, Case No. 20-cv-1666, United States District Court for the Northern District of Illinois Eastern Division, March 18, 2020 Order attached as Exhibit "**A**."

## II.     RELEVANT FACTS.

On January 5, 1990, Gibson initiated a lawsuit against Heritage concerning trademarks at issue in the present case, namely Gibson's ES Body Shape Design® (2,007,277) and Les Paul Body Shape Design® (U.S. Reg. No. 1782606). *See Gibson Guitar Corp. v. Heritage Guitar, Inc. and Lasar Music Corp.*, Civil Action No. 3-90-0009, United States District Court for the Middle District of Tennessee, Nashville, Division.  It was a lengthy litigation that lasted until September 13, 1991, or a year and eight months.  [*See* Docket generally.]  The parties engaged in discovery, retained experts, conducted depositions, and filed trial briefs.  [*Id.*]  The case contained over 140 docket entries in almost two (2) years of litigation.  [*Id.*]

At the same time, the parties were also involved in a matter before The Trademark and Appeal Board ("TTAB")—*Heritage Guitar, Inc. v. Gibson Guitar Corp.*, Opposition No 91,080,847—that involved Heritage's opposition to Gibson's application for its Les Paul Body Shape Design®.  That too was lengthy, lasting from July 7, 1989, until March 4, 1992.  On August 29, 1991, the parties entered into a ***Confidential Settlement Agreement***.  The Confidential Settlement Agreement

4

resolved the issues in both the litigation and TTAB matter. Paragraph 13 of the Settlement Agreement required the parties to keep the terms of the Settlement Agreement confidential:

> No party shall publish for general circulation, such as by press release, mass mailing, trade journal interview or the like, the details of this Settlement Agreement, except however, that any party may disseminate the Press Release exhibited to this Agreement, and/or may publish statements which in substance reiterate the terms of the Press Release. In addition, the parties may publicly state that the lawsuit was resolved on a satisfactory basis. Furthermore, **Gibson may** disclose the details of the Settlement Agreement **in confidence** to future opposing litigants or potential litigants, and to any judicial tribunal, in matters involving related issues where it is relevant for Gibson to establish its prior history in the protection of the marks involved in this litigation. **Any such detailed disclosure** shall be made **under an agreement of confidentiality** between Gibson and the receiving party, or **under terms** on which disclosure may be **directed by judicial tribunal**. [emphasis added].

Thus, not only did Heritage agree to keep the terms of the Settlement Agreement confidential, it specifically agreed that only Gibson could disclose the terms of the Confidential Settlement Agreement to the Court and only under terms directed by the Court, *i.e.*, a protective order. As the parties expressly agreed to keep the terms of the Settlement Agreement confidential, this Court should deny Heritage's Non-Emergency Motion to Unseal.

### III.     ARGUMENT AND CITATION TO AUTHORITY.

While Heritage cites flowery language from cases that pertain to the desire for public disclosure in court filings, it fails to alert this Court to case law regarding disclosure of confidential settlement agreements. It is well-established that a district court has "supervisory power over its own records and files," which includes the power to determine whether court documents should be accessible to the public. *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598, 98 S. Ct. 1306, 1312 (1978). A court's discretion to seal documents, however, "'is circumscribed by a long-established legal tradition' which values public access to court proceedings." *Proctor & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996) (quoting *Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165, 1177 (6th Cir. 1983)). The tradition of access is rooted in both the First Amendment and the common law. *Brown & Williamson*, 710 F.2d at 1177. "Only the most compelling reasons can justify non-disclosure

5

of judicial records." *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983). This presumption is embodied in this district's Local Rule 10.6, which provides that "the filing of documents under seal should be the exception" and "is to be limited to information that is truly proprietary or confidential." W.D. Mich. LCivR 10 .6(a).

The public's right of access to court documents is important but not absolute. *See Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983). Exceptions deemed adequate to justify non-disclosure of documents include preservation of a defendant's right to a fair trial, privacy rights of the litigants and third parties, trade secrets, and national security. The resolution of private disputes frequently involves issues and remedies affecting third parties or the general public. *See Id.*

On the other hand, "[s]ettlements between private parties are generally purely a matter of private contract." *See Arbour v. Alterra Wynwood of Meridian*, No. 1:09-CV-246, 2010 WL 11688550, at *1–2 (W.D. Mich. Mar. 9, 2010). "Neither the Court nor the public ordinarily has any right to disclosure of the terms of a private settlement between non-governmental parties like those in this case." *Id.* "Under these circumstances, the public interest in disclosure is considerably less strong than in cases involving public entities as litigants." *Id.* "In addition, the disclosure at issue here is the particular amount involved in a settlement agreement between private parties." *Id.*

Both Gibson and Heritage negotiated and agreed to the confidentiality of the Settlement Agreement. "Such matters are generally private, if the parties choose to treat them as such." *Id.* "Indeed, at least in this circuit, the settlement terms and negotiations may actually be subject to a unique settlement privilege protection." *Id.* (citing *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003)). "Here the parties plainly negotiated and agreed upon settlement terms with the explicit expectation of confidentiality." *Id.* "The parties negotiated their agreement in the context of a court-sponsored mediation process that protects confidentiality." *Id.* "Indeed, the settlement may not have ever been possible without the agreement of confidentiality." *Id.*

6

"Accordingly, the interest in protecting confidentiality is high for not only the parties, but also for the Court and even the public, which share an interest in preferring private settlement of civil matters to lengthy and expensive litigation." *Id.*

"Under this unusual combination of circumstances, the Court finds good and compelling cause to seal document # 34 because it discloses with specificity the dollar amount of the total settlement, and the particular settlement amounts of the individual claimants." *See Id.; see also Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 1:05-CV-051, 2008 WL 11383686, at *1 (W.D. Mich. Feb. 26, 2008) ("Disclosure of the information contained in exhibit H would be prejudicial because it would give claimants in future Duracon Uni–Knee cases detailed information about the settlement value and defense costs of different types of claims.  This information would create an imbalance in any negotiations between such a claimant and Stryker Corporation or another defendant.  Thus, Plaintiffs have shown good cause for the sealing of exhibit H.").  Similarly, third parties infringing or challenging Gibson's trademark rights in its ES Body Shape Design® and Les Paul Body Shape Design® would gain an advantage in negotiations by knowing the specifics of the Confidential Settlement Agreement.

After lengthy litigation in federal court and before the TTAB, Gibson and Heritage agreed to settle their disputes and agreed to the keep the terms of the Settlement Agreement confidential.  The confidentiality provision was an cirtical part of the Confidential Settlement Agreement.  Now, Heritage, for what appears to be publicity reasons, wants to make the terms of the Confidential Settlement Agreement public.  Its desire to do so appears to be so it can disseminate the terms of the Confidential Settlement Agreement through its subsidiary company www.guitar.com to further Heritage's negative PR campaign against Gibson.  For example, even before Gibson has made an appearance or responded to the Non-Emergency Motion to Unseal, Heritage has already disseminated the filing to its related media company www.guitar.com to further Heritage's negative PR campaign

7

against Gibson.  *See* https://guitar.com/news/gibson-and-heritage-clash-over-redacted-court-filing/ ("The legal fight between Gibson and Heritage has taken a fresh twist, as a dispute over how much of the original redacted legal suit should be released to the public has led to a fresh filing from Heritage, demanding that the court grants its wish to release the original document without anything redacted for confidentiality reasons.")

Worst yet, Heritage makes this request while the Nation deals with a pandemic. Gibson respectfully requests this Court keep the terms of the Settlement Agreement confidential, as the parties intended when they settled their dispute. *See Arbour v. Alterra Wynwood of Meridian*, 2010 WL 11688550, at *1–2 ("Accordingly, the interest in protecting confidentiality is high for not only the parties, but also for the Court and even the public, which share an interest in preferring private settlement of civil matters to lengthy and expensive litigation.").  Allowing a party to reveal the specific details of a confidential settlement agreement after perfecting the contract merely by filing a premature declaratory judgment action challenging that contract would have a chilling effect on the negotiations between future litigants.  Creating this precedent would lead to fewer settlements, forcing courts to devote more valuable judicial resources to resolve disputes between parties.  Gibson, however, does not oppose Heritage's request to keep portions of the Complaint redacted, as the redactions are in accordance with the parties' Confidential Settlement Agreement.

## IV.  CONCLUSION.

Gibson respectfully requests this Court deny Heritage's bad faith Motion to Unseal.  The confidential terms of the Settlement Agreement should remain confidential as the parties agreed to when they resolved their disputes in 1991.  Unsealing the terms of the Confidential Settlement Agreement could have a negative effect on future settlement agreements, as parties might be reluctant to resolve their dispute knowing that those terms could later be made public.  Accordingly, Gibson

respectfully requests this Court deny the Motion to Unseal.  Despite Heritage's claims, Gibson does not oppose Heritage's request to file its unredacted Complaint under seal.

Respectfully submitted,

CARLSON, GASKEY & OLDS, P.C.
Attorneys for Defendant

/s/ Steven Susser
Steven Susser
Carlson, Gaskey & Olds, P.C.
400 W Maple Road, Ste 350
Birmingham, MI 48009
(248) 283-0734
ssusser@cgolaw.com

## **CERTIFICATE OF COMPLAINCE WITH L.R. 7.3(B)**

       I hereby certify that the foregoing Brief complies with the limintation of the length of a non-dispositive motion set forth in L.R. 7.3(b)(i). Specifically, this brief contains 2,494 words (expcluding the parts of the brief exempted by the Rule), as determined by the word count feature of the word processing program used to create this brief, Microsoft Word 2016.

|  |  |
|---|---|
|  | CARLSON, GASKEY & OLDS, P.C.<br>Attorneys for Defendant |
| Dated: April 7, 2020 | /s/ Steven Susser<br>Steven Susser<br>Carlson, Gaskey & Olds, P.C.<br>400 W Maple Road, Ste 350<br>Birmingham, MI 48009<br>(248) 283-0734<br>ssusser@cgolaw.com |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 7, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to counsel of record.

                                                                   CARLSON, GASKEY & OLDS, P.C.
                                                                   Attorneys for Defendant

Dated: April 7, 2020                                    /s/ Steven Susser
                                                                   Steven Susser
                                                                     Carlson, Gaskey & Olds, P.C.
                                                                   400 W Maple Road, Ste 350
                                                                   Birmingham, MI 48009
                                                                   (248) 283-0734
                                                                   ssusser@cgolaw.com