UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HERITAGE GUITAR, INC.,

      Plaintiff,

v.

GIBSON BRANDS, INC.,

      Defendant.

Case No. 20-cv-229

Honorable Janet T. Neff

Magistrate Judge Ray Kent

---

## PARTIES' JOINT NOTICE

Plaintiff Heritage Guitar, Inc. ("Heritage") and Gibson Brands, Inc. ("Gibson") submit this Joint Notice pursuant to the Court's Order dated May 28, 2020, which directed the parties to "set[] forth for each ground for dismissal or transfer:  (1) the issues that have been resolved based on the underlying facts and authority; and (2) each issue that remains in dispute, along with a brief statement of the parties' positions." (ECF No. 24.) On June 26, 2020, the parties conferred to discuss issues that could be resolved without the Court's participation. The parties were unable to resolve any disputes.

Below are the issues that remain in dispute along with brief statements submitted by the parties. All references to the "1991 Settlement Agreement" refer to the agreement the parties entered into on August 29, 1991. (ECF No. 22.)

## I.    MOTION TO DISMISS

### COUNT I (Declaratory Judgment that Heritage Has Not Breached the 1991 Settlement Agreement)

Gibson's Argument

- Court should not exercise discretionary jurisdiction over Declaratory Judgment because Heritage did not comply with the condition precedent in the 1991 Settlement Agreement

before filing suit, *i.e.*, ███████████████. (*See* Settlement Agreement at ¶ 14.) Specifically, Heritage did not comply with the ████ cure provision in the parties' contract, as the ████ cure period did not end until March 21, 2020–eight days after Heritage filed its Complaint.  *See Am. Speedy Printing Centers, Inc. v. AM Mktg., Inc.*, 69 F. App'x 692, 701 (6th Cir. 2003) ("Accordingly, under the plain language of the franchise agreement, until the agreement was terminated according to its explicit terms (30-day's notice and an opportunity to cure), AM Marketing was not an unauthorized user.").  In addition, no case or controversy, required by the Declaratory Judgment Act, has arisen as Gibson could not sue for breach of contract until the ████ cure provision had accrued.  Heritage's Declaratory Judgment Complaint is simply an attempt to forum shop.  *See Encore Furniture Thrifts & More, LLC v. Doubletap, Inc.*, 281 F. Supp. 3d 665, 668 (M.D. Tenn. 2017) ("A plaintiff who files a declaratory judgment action does not have a right to the forum of his choosing.")

- Furthermore, Heritage's claims for invalidation, cancellation, laches, waiver, estoppel, and acquiescence fail as a matter of law because ██████ ████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████ ████████████

## Heritage's Response

- The ████ cure provision does not apply to Heritage's complaint because Heritage's complaint does not include any cause of action for breach of contract or any allegation that Gibson violated the 1991 Settlement Agreement. (*See* Settlement Agreement ¶ 14.) To the contrary, Heritage merely seeks a declaration that Heritage itself has not breached the 1991 Settlement Agreement. Attempting to apply the notice and cure provision here is nonsensical; there is nothing under the 1991 Settlement Agreement to cure. By its own terms, the notice of breach and cure provision does not apply. The cases cited by Gibson do not hold otherwise.

- Moreover, a condition precedent "is an event, not certain to occur, which must occur . . . before performance under a contract becomes due." Restatement (Second) of Contracts § 224 (1981). The 1991 Settlement Agreement does not contain a condition precedent because providing Gibson the opportunity to cure some non-alleged violation is not something that must occur before performance under the 1991 Settlement Agreement becomes due.

  o Even if it were, "conditions precedent are disfavored by the law and contract provisions will be construed as conditions precedent only if the parties plainly so intend." *4218868 Canada, Inc. v. Kwasny*, 654 F. App'x 727, 734 (6th Cir. 2016) (summary order).

- o The parties' intent to draft a condition precedent cannot be found anywhere in the 1991 Settlement Agreement. *See, e.g.*, *Hypergraphics Press. Inc. v. Cengage Learning, Inc.*, 2009 WL 972823, at *3 (N.D. Ill. Apr. 8, 2009) ("[I]n order for notice and opportunity to cure to be a condition precedent to filing suit on the claim, the contract must so state.").

- Even if the Settlement Agreement could be interpreted as requiring Heritage to provide Gibson notice and ▮▮▮▮ to cure some non-alleged breach of contract, compelling compliance with such a requirement here is improper because it would have been futile for Heritage to ask Gibson to "cure."

  - o On May 24, 2019, Gibson explicitly threatened to sue Heritage for trademark infringement in the Central District of California and attached a draft complaint. Heritage and Gibson had previously exchanged correspondence, including on February 6, 2019, and May 1, 2019, and also met in person to discuss Gibson's claims. Nothing was resolved, and on February 20, 2020, Gibson sent a further cease and desist letter and gave Heritage a deadline of March 5 before it would seek remedies against Heritage.

  - o The only "cure" available would have been for Gibson to stop threatening Heritage with litigation, which Gibson already had refused to do for nearly a year. Thus, any further "notice" would have been a "useless" act. *See, e.g.*, *Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991) ("[S]trict adherence to the [s]ubcontract's two-day cure provision would have been a useless act.") (internal quotation marks omitted); *L.K. Comstock & Co. v. United Eng'rs & Constructors Inc.*, 880 F.2d 219, 232 (9th Cir. 1989) (compliance with a two-day notice provision is not required where it would amount to a "useless gesture"); *Craddock v. Greenhut Constr. Co., Inc.*, 423 F.2d 111, 115 (5th Cir. 1970) (contractual condition excused where it "was a useless gesture").

- The single case Gibson cites in support of its argument that the notice and cure provision is a condition precedent, *American Speedy Printing Centers,* has nothing to do with conditions precedent. 69 F. App'x at 701. In that case, the notice and cure provision did not constitute a condition precedent to a party's right to sue, and the case has nothing to do with the issues before the Court.

- Gibson's argument that there is no case or controversy as required by the Declaratory Judgment Act is is contradicted by Gibson's own conduct.

  - o The "actual controversy" requirement under the Declaratory Judgment Act is coextensive with Article III's case or controversy requirement, *see, e.g.*, *Petter Invs., Inc. v. Hydro Engineering, Inc.*, 828 F. Supp. 2d 924, 932 (W.D. Mich. 2011), and the proper inquiry "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment," *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation marks omitted).

o Under *MedImmune*, a reasonable apprehension of suit serves as a basis for a valid Article III controversy. *See Michigan v. M22 LLC*, 2017 WL 1420007, at *2 (W.D. Mich. Apr. 21, 2017).  Here, there can be no doubt that Heritage possessed a reasonable apprehension of suit—Gibson explicitly threatened to sue Heritage in the Central District of California, attached a draft complaint, and later gave Heritage a deadline for "compliance."

## COUNT II (Declaratory Judgment of Non-Infringement of the '606 Mark)

Gibson's Argument

- Court should not exercise discretionary jurisdiction over Declaratory Judgment because Heritage did not comply with the condition precedent in the 1991 Settlement Agreement before filing suit, i.e., the ███████ cure provision thus claim is not ripe.  (*See* Settlement Agreement at ¶ 14.)  Heritage's Declaratory Judgment Complaint is simply a publicity stunt and an attempt to forum shop.  *See* Gibson's Response to Count I, which Gibson reasserts here.

Heritage's Response

- *See* Heritage's Response to Count I, which Heritage reasserts here.

## COUNT III (Declaratory Judgment of No Dilution of the '606 Mark)

Gibson's Argument

- *See* Gibson's Response to Count II, which Gibson reasserts here.

Heritage's Response

- *See* Heritage's Response to Count I, which Heritage reasserts here.

## COUNT IV (Declaratory Judgment of Invalidity and Unenforceability of the '606 Mark)

Gibson's Argument

- *See* Gibson's Response to Count I, which Gibson reasserts here.  Gibson's ES Body Shape Design® trademark (U.S. Reg. No. 2007277) was obviously one of the marks subject to the 1991 Agreement.  (*See* Settlement Agreement at ¶ 2(b)(2), ████████████████████████████████████████████ …(2) ES "double cutaway" series (a representative of which is attached as Exhibit A–4)."))  Similarly, Gibson's Les Paul Body Shape Design® (U.S. Reg. No. 1782606) is ███████████████ of the

4

Settlement Agreement that states in relevant part: 

Heritage's Response

- Heritage's complaint does not impermissibly challenge Gibson's intellectual property rights.

- Similarly, Accordingly, Heritage has every right to assert these claims.

- As the Supreme Court very recently declared, "liability for trademark infringement turns on marketplace realities that can change dramatically from year to year." *Lucky Brand Dungarees v. Marcel Fashions Group, Inc.*, 2020 WL 247020 (U.S. May 14, 2020). The 1991 Agreement cannot and does not bar Heritage from raising challenges to Gibson's trademarks on bases that did not exist at the time the 1991 Agreement was signed.

**COUNT V (Declaratory Judgment of Non-Infringement of the '277 Mark)**

Gibson's Argument

- *See* Gibson's Response to Count II, which Gibson reasserts here.

Heritage's Response

- *See* Heritage's Response to Count I, which Heritage reasserts here.

**COUNT VI (Declaratory Judgment of No Dilution of the '277 Mark)**

Gibson's Argument

- *See* Gibson's Response to Count II, which Gibson reasserts here.

Heritage's Response

- *See* Heritage's Response to Count I, which Heritage reasserts here.

## COUNT VII (Declaratory Judgment of Invalidity and Unenforceability of the '277 Mark)

Gibson's Argument

- *See* Gibson's Response to Count IV, which Gibson reasserts here.

Heritage's Response

- *See* Heritage's Response to Count IV, which Heritage reasserts here.

## COUNT VIII (Cancellation of Registrations)

Gibson's Argument

- *See* Gibson's Response to Count IV, which Gibson reasserts here.

Heritage's Response

- *See* Heritage's Response to Count IV, which Heritage reasserts here.

## COUNT IX (Declaratory Judgment of Unenforceability of the Asserted Trademarks Due to Laches)

Gibson's Argument

- Heritage's laches claim fail as a matter of law because ████████████████ ████████████████  *See* Gibson's Response to Count I, which Gibson reasserts here.

Heritage's Response

- Heritage's claim for laches is not covered by ████████████████ ████████████████████████████████  *See Pennsylvania Life Ins. Co. v. City of River Rouge*, 676 F. Supp. 2d 575, 582 (E.D. Mich. 2009) (explaining the difference between a waiver and the doctrine of laches).

## COUNT X (Estoppel)

Gibson's Argument

- Heritage's claims for estoppel fail as a matter of law because Heritage waived that claims in the 1991 Settlement Agreement. *See* Gibson's Response to Count I, which Gibson reasserts here.

Heritage's Response

- Heritage's claim for estoppel is not covered by ████████████████████ ████████ Heritage's estoppel argument is not based on the fact that nearly 30 years have passed since the parties signed the Settlement Agreement, but rather on the fact that by signing the Settlement Agreement itself, ████████████████████████████ ████████████████████████████████████████████████████████████

  o ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ Heritage relied on Gibson's representations and inaction to its detriment.

  o In reliance on Gibson's representations and inaction, Heritage has continued to conduct its business by manufacturing, branding, and selling guitars ████ ████████████████████████ to customers under the belief that those designs were non-infringing and complied with the Settlement Agreement.

## COUNT XI (Acquiescence)

Gibson's Argument

- Heritage's claims for acquiescence fail as a matter of law because ████████████████ ██████████████████████████. *See* Gibson's Response to Count I, which Gibson reasserts here.

Heritage's Response

- Heritage's claim for acquiescence is not covered by ██████████████████ ██████████. Heritage's acquiescence argument is not based on the fact that nearly 30 years have passed since the parties signed the Settlement Agreement, but rather on the fact that, ████████████████████████████████████████████████

- ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████

## COUNT XII (Waiver)

Gibson's Argument

- Heritage's claims for waiver fail as a matter of law because ███████████ ███████████████████████████ *See* Gibson's Response to Count I, which Gibson reasserts here.

Heritage's Response

- Heritage's claim for waiver is not covered by p███████████████████████ Heritage's waiver argument is not based on the fact that nearly 30 years have passed since the parties signed the Settlement Agreement, but rather on the fact that, ████████████████████████████████████████████████████



- ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████ Gibson has waived any rights it has to enforce the Asserted Marks against Heritage.

## II.   **MOTION TO TRANSFER**

Gibson's Argument

- "A plaintiff who files a declaratory judgment action does not have a right to the forum of his choosing." *Encore Furniture Thrifts & More, LLC v. Doubletap, Inc.*, 281 F. Supp. 3d 665, 668 (M.D. Tenn. 2017). In reviewing a motion to transfer, the court balances case-specific factors, including the private interests of the parties and public-interest concerns, such as systemic integrity and fairness, which come under the rubric of "interests of justice." *See Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 877 (M.D. Tenn. 2019); *see also Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006). "Private interests include: (1) the location of willing and unwilling witnesses; (2) the residence of the parties; (3) the location of sources of proof; (4) the location of the events that gave rise to the dispute; (5) systemic integrity and fairness; and (6) the plaintiff's choice of forum." *Id*. "Public interests include the enforceability of the judgment, practical considerations affecting trial management, docket congestion, local interest in deciding local controversies at home, public policies of the fora, and familiarity of the trial judge with the applicable state law." *Id*.

- The private and public factors weigh in favor of transfer because: (1) Nashville is more convenient for non-party witness ████████████, Gibson's signatory to the 1991 Settlement Agreement; (2) more relevant documents are located in Nashville; (3) Heritage is not a natural plaintiff, so its choice of forum is given little weight; (4) the Tennessee courts have an interest in resolving this matter as ███████████████, and Gibson is the natural plaintiff that resides in Nashville and (5) the parties agreed that the

████████████████████████████████████████ law .  (*See* Settlement Agreement at ¶¶ 7, 10, 22.)

- While Heritage is a resident of Michigan, it is not a natural plaintiff; thus, its choice of forum is given less weight.  *See Cincinnati Ins. Co. v. O'Leary Paint Co.*, 676 F. Supp. 2d 623, 631 (W.D. Mich. 2009) ("Although plaintiff's choice of forum is ordinarily entitled to some deference, it should carry less weight in a declaratory judgment action.").

- The location of events that gave rise to the dispute is an "important factor" in resolving a motion to transfer venue.  *See Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 879 (M.D. Tenn. 2019); *see also Oakley v. Remy Int'l, Inc.*, No. 2:09-0107, 2010 WL 503125, at *5 (M.D. Tenn. Feb. 5, 2010) ("A fundamental principle guiding the Court's analysis of a motion to transfer is that litigation should proceed in that place where the case finds its center of gravity.") (citation omitted).  The present lawsuit involves a 1991 Settlement Agreement that arose from litigating in Tennessee involving allegations of infringement concerning a Tennessee Company's (Gibson) Intellectual Property.  Gibson is still located in Tennessee, and its witnesses and non-party witnesses are located there. Furthermore, Gibson makes guitar and guitar products in its factory in Nashville, Tennessee.

- It is undisputed that the 1991 Settlement Agreement will be examined under ████████ law; therefore; it is preferable to have a ████████ court apply its law to this case. *See Crate v. Falconhead Capital, LLC*, No. 5:08CV390, 2008 WL 11383520, at *2 (N.D. Ohio June 19, 2008) ("the parties' letter agreement contains a New York choice of law provision. Having elected to invoke the benefits of New York law for resolving disputes under the contract, 'there is obviously much to be said in favor of letting such disputes be resolved in [that state].'")

Heritage's Response

- Gibson only identifies a *single* non-party witness—Gibson's ████████████—but has done nothing else to sustain its significant burden of proof on this issue. "The party seeking transfer may not simply claim that transfer to another forum would be more convenient for the witnesses. Rather, it must show that the witnesses will not attend or will be severely inconvenienced if the case proceeds in the forum district." *Waal v. AFS Techs., Inc.*, 2014 WL 1347794, at *7 (W.D. Mich. Apr. 4, 2014) (internal quotation marks omitted).

  o The party asserting witness inconvenience "has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Rinks v. Hocking*, 2011 WL 691242, at *3 (W.D. Mich. Feb. 16, 2011) (internal quotation marks omitted). Gibson will not be able to make such particularized showings, including why ████████ testimony is important to the resolution of this case, whether ████████ will not attend or be severely

inconvenienced if the case proceeds in Michigan, or why Gibson cannot merely take ███████ testimony in a deposition.

o   Additionally, Gibson previously sent Heritage a cease and desist letter and draft complaint threatening to bring suit in the Northern District of California. Having itself threatened to sue in California, Gibson cannot be heard to claim that the only convenient place to litigate this dispute is in Tennessee.

o   Moreover, there are numerous potential party and non-party fact witnesses for whom Michigan is the more convenient forum. The below is a nonexhaustive list of potential witnesses that Heritage may supplement in the future:

- ▪ (1) Jim Deurloo – one of the founders of Heritage who still works at Heritage today, and one of the few individuals who would have been involved in decisions about the design of Heritage's guitars over the years (based in Michigan);
- ▪ (2) Jeff Nicholson – current owner of Heritage (based in Michigan);
- ▪ (3) Marvin Lamb – one of the founders of Heritage who worked at Heritage when the 1991 Settlement Agreement was negotiated (based in Michigan);
- ▪ (4) Ron Howard – former marketing specialist who worked at Heritage from 2016-19 (based in Michigan);
- ▪ (5) A representative from Rhino Media, a marketing agency for Heritage (based in Michigan).

- Transfer to Tennessee would make testifying significantly less convenient for these witnesses. A court should deny a motion to transfer venue if the transfer would simply shift the inconvenience from one party to the other. *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not to forum likely to prove equally convenient or inconvenient."). Therefore, this factor substantially weighs against transfer.

- Gibson's claim that "more relevant documents are located in Nashville" is both unfounded (the parties have not even begun discovery) and likely untrue (the nexus of this case is in Michigan, where Heritage  resides and where Gibson directed its cease and desist letters). In any event, "The advent of modern technology, including photocopying, scanning, and electronic document production, has deprived this factor of most of its practical or legal weight." *Rinks*, 2011 WL 691242, at *3. So this factor does not weigh in favor of transfer either.

- As Gibson itself concedes, even in a declaratory judgment, a plaintiff's choice is still entitled to some weight. *See Cincinnati Ins. Co.*, 676 F. Supp. 2d at 631.

- Nothing in the 1991 Settlement Agreement makes Tennessee an exclusive forum.

- The parties knew how to draft a provision that provides for exclusive jurisdiction if that is what they meant. (*See* 1991 Settlement Agreement Ex. F.) That is not what the parties meant or said here. *See, e.g.*, *679637 Ontario Ltd. v. Alpine Sign & Printer Supply, Inc.*, 218 F. Supp. 3d 572, 577 (E.D. Mich. 2016) ("An agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion.") (alterations and internal quotation marks omitted).

- Gibson itself acknowledged this when it threatened to bring suit in the Northern District of California.

- Moreover, in the absence of any complex legal issues, the necessity for a Michigan district court to apply another state's law would not be a weighty factor anyway. *See, e.g.*, *Waal*, 2014 WL 1347794, at *8 ("[W]here the law in question is neither complex nor unsettled, the interests of justice remain neutral between competing courts.") (internal quotation marks omitted).

**III.     Stipulated Proposed Briefing Schedule**

- If the Court determines further briefing is necessary, the parties propose the following schedule: Gibson will have twenty (20) days from date of the Order to submit its brief; Heritage will have twenty (20) days to respond; and Gibson have seven (7) days to file a reply.

Respectfully submitted,

Dated:  July 9, 2020                    *Attorneys for Plaintiff*

VARNUM LLP
By:___/s/ Bryan R. Walters_____
Bryan R. Walters (P58050)
Business Address, Telephone, and E-mail:
P.O. Box 352
Grand Rapids, MI  49501-0352
616/336-6000
brwalters@varnumlaw.com

  and

 Mark G. Matuschak
 Vinita Ferrera
 Allyson Slater
 WILMER CUTLER PICKERING HALE AND DORR LLP
 60 State Street

Boston, MA  02109
(617) 526-6559 (t)
(617) 526-5000 (f)
Mark.matuschak@wilmerhale.com

Jared D. Hoffman
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007

*Attorneys for Defendant*

BATES & BATES, LLC
By:   */s/ Kurt Schuettinger*
Andrea E. Bates
Pro Hac Vice
Kurt Schuettinger
Pro Hac Vice
Bates & Bates, LLC
1890 Marietta Boulevard NW
Atlanta, Georgia 30318
Telephone: (404) 228-7439
Facsimile: (404) 963-6231
abates@bates-bates.com
kschuettinger@bates-bates.com

and

Steven Susser
Carlson, Gaskey & Olds, P.C.
400 W Maple Road, Ste 350
Birmingham, MI 48009
(248) 283-0734
ssusser@cgolaw.com