UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HERITAGE GUITAR, INC.,

    Plaintiff,

v.

GIBSON BRANDS, INC.,

    Defendant.

                                /

Case No. 1:20-cv-229

Hon. Hala Y. Jarbou

## OPINION

This case centers on whether trademarks are being infringed and whether a 1991 confidential settlement agreement has been breached. Plaintiff Heritage Guitar, Inc. seeks declaratory relief holding that it has neither infringed on Defendant Gibson Brands, Inc.'s intellectual property nor has it breached the settlement agreement between the two parties. Heritage is also requesting the cancellation of two trademarks registered by Gibson. Before the Court is Gibson's motion to dismiss, or, in the alternative, to transfer this case to the Middle District of Tennessee. (ECF Nos. 43, 44.)[1] The motion will be granted in part: the Court will not dismiss or transfer the case, but it will dismiss the equitable claims challenged by Gibson.

### I. Background

Gibson makes guitars. Its line of products features some of the most iconic electric guitars in the world, such as the Les Paul model. Gibson was originally based in Kalamazoo, Michigan, where it manufactured guitars at 225 Parsons Street. (Compl., ECF No. 1, 14, PageID.58.) In the

---

[1] Much of the present controversy is rooted in the meaning of certain provisions contained in a confidential 1991 settlement agreement between Heritage and Gibson. Redacted versions of the complaint and briefs relating to the present motion to dismiss have been filed. Unredacted versions of those documents have been filed under seal. So, for example, ECF No. 43 is the sealed unredacted motion to dismiss, while ECF No. 44 is the redacted version of the motion.

1980s, the company moved its operations to Tennessee. Not everyone went along. Some former employees decided to stay in Kalamazoo and "carry on the tradition of hand-crafted guitar-making that started at Parsons Street in 1917." (*Id.*)  In 1985 they formed a new company called Heritage – ostensibly a reference to the tradition that the stay-behind luthiers sought to preserve. (*Id.*, PageID.58-59.)

Heritage began to manufacture guitars that resembled the designs of famous Gibson models. (*Id.*, PageID.59.) Gibson accused Heritage of copying its designs and the parties litigated the issue in federal court and before the United States Trademark Trial & Appeal Board. (*Id.*) The litigation ended in 1991 when the two companies executed a confidential settlement agreement. (*Id.*) The settlement agreement required Heritage to make certain specific changes to its guitar designs but left other elements intact. The settlement also permitted Heritage a reasonable degree of design freedom, so long as those future designs were not "closer in appearance to Gibson's registered and unregistered trademarks" than the Heritage guitars that led to the legal battle. (1991 Settlement Agreement, ECF No. 22, PageID.133.)

The companies seem to have left each other alone for nearly twenty-five years after the settlement. In February 2015, a law firm representing Gibson sent Heritage a cease-and-desist letter, stating that certain Heritage guitar designs violated Gibson's trademarked Les Paul body shape design and ES body shape design. (02/03/2015 Letter, ECF No. 53-6, PageID.802.) The record does not indicate whether Heritage responded to that letter, and it does not appear that Gibson took any further action.

In February 2019, Gibson sent another cease-and-desist letter, repeating the claim that Heritage guitars infringed the trademarked Les Paul and ES body shapes, which it alleged violated the 1991 settlement agreement. (02/06/2019 Letter, ECF No. 53-6, PageID.751.) Heritage replied

2

in May, contending that the challenged models were not infringing and complied with the settlement agreement. (5/01/2019 Heritage Response, ECF No. 53-7, PageID.832-833.) Gibson responded, reiterating their position. (5/24/2019 Gibson Reply, ECF No. 53-4, PageID.717.) Gibson stated its willingness "to settle this matter amicably" rather than go to court, but also attached a draft complaint it was prepared to file in the Northern District of California should the issue remain unresolved. (*Id.*, PageID.728.) The letter gave Heritage until June 7, 2019, to tell Gibson whether it would "agree to settle this matter without the need for litigation." (*Id.*, PageID.720.) According to Heritage, after a phone conference, "Gibson dropped the matter and Heritage heard nothing further for months." (Compl., PageID.67.)

At some point, the parties discussed a "collaboration relating to the redevelopment of the 225 Parsons Street building," where Gibson originally manufactured its guitars in Kalamazoo. (*Id.*) But, Heritage claims, Gibson "conditioned its participation in the project on [the] cessation of operations by Heritage." (*Id.*) Gibson argues it merely demanded compliance with the settlement agreement before proceeding further. (Def.'s Br., ECF No. 43-1, PageID.304.) Either way, Gibson sent a third cease-and-desist letter on February 20, 2020. The letter imposed a March 5 deadline for Heritage to "comply with the terms" of the settlement agreement and noted that failure to do so will leave Gibson with "no other choice but to seek remedy against [Heritage]." (2/20/2020 Letter, ECF No. 53-2, PageID.673.) Gibson avers that Heritage requested – and received – an extension of that deadline to March 13. (Br., PageID.304.) Nothing in the record shows that this happened one way or the other. On March 13, 2020, Heritage filed suit in this Court.

## II. Standards

### A. Failure to State a Claim

When considering a motion to dismiss brought under Rule 12(b)(6), courts must ask whether the plaintiff has alleged "facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level,' and . . . 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausible does not mean probable, but the standard "asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Where a plaintiff pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

On a motion to dismiss, courts must accept factual allegations as true, but will reject conclusory statements as "not entitled to the assumption of truth." *Id.* (citing *Twombly*, 550 U.S. at 555-56). Hence, courts will ignore conclusory assertions and, accepting well-pleaded factual allegations as true, determine whether the allegations "plausibly give rise to an entitlement to relief." *Id.* Determining the plausibility of a claim is a "context-specific" inquiry, "requiring the reviewing court to draw on its experience and common sense." *Id.* If the court decides that there is no plausible claim to relief, then the motion to dismiss will be granted.

### B. Subject Matter Jurisdiction

The standard for evaluating a Rule 12(b)(1) motion depends on the nature of the "attack" on subject matter jurisdiction. A "facial attack" on subject matter jurisdiction "merely questions the sufficiency of the [complaint]." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325

(6th Cir. 1990). Facial attacks are reviewed under the same standard as is applied to a Rule 12(b)(6) motion: the court accepts the plaintiff's well-pleaded allegations as true and asks whether subject matter jurisdiction exists based on the complaint. *Id.* No presumption of truth applies in a "factual attack" on subject matter jurisdiction. *Id.* Factual attacks challenge the actual existence of matters affecting jurisdiction. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). To resolve a factual attack, "'the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. . . . [T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Id.* (quoting *Mortensen v. First Fed. Savings & Loans Ass'n*, 549 F.2d 884, 890-91 (3d Cir. 1977)). The plaintiff bears the burden of proof of jurisdiction when a factual attack is made. *Id.*

### III. Analysis

Gibson's motion to dismiss raises several arguments. First, it contends that the Court lacks subject matter jurisdiction because Heritage's lawsuit does not concern a live case or controversy. Assuming that the Court has jurisdiction, the motion asks the Court to decline to exercise it. Finally, Gibson argues that certain equitable defenses raised by Heritage be dismissed as barred by the 1991 settlement agreement.[2] Should the Court reject those arguments Gibson asks that, in the alternative, the case be transferred to the Middle District of Tennessee. Each issue will be addressed in turn.

---

[2] Because Heritage is the Plaintiff in this declaratory action, it lists equitable defenses as "Counts" instead of affirmative defenses – if the Court determined that one of the equitable defenses applied, then Heritage would win its suit.

### A. Jurisdiction

#### 1. Subject matter jurisdiction

As will be explained in more detail, Gibson argues that the Court lacks subject matter jurisdiction because there is no live case or controversy. It argues that there is no live case or controversy because a thirty-day notice-and-cure period set forth in the 1991 settlement agreement had not lapsed before Heritage filed this lawsuit. Gibson therefore brings a factual attack on this Court's subject matter jurisdiction, meaning the Court may consider evidence outside the pleadings and need not treat the complaint as true.

The Declaratory Judgment Act permits a federal district court to "declare the rights and other legal relations of any interested party seeking such declaration." 15 U.S.C. § 2201(a). However, declaratory judgments can only be issued with respect to "a case of actual controversy within its jurisdiction." *Id.* The phrase "case of actual controversy" in section 2201(a) "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III" of the United States Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). "'[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

"[A] charge of infringement is sufficient to create a justiciable controversy within the Declaratory Judgment Act." *McKee Foods Kingman v. Kellogg Co.*, 474 F. Supp. 2d 934, 939 (E.D. Tenn. 2006) (citing *Robin Prods. Co. v. Tomecek*, 464 F.2d 1193, 1196 (6th Cir. 1972)). In addition to the underlying legal issue, many courts used to require plaintiffs to further establish a "reasonable apprehension of imminent suit" to invoke the Declaratory Judgment Act. That second hurdle was rejected by the Supreme Court in *MedImmune*. *See Michigan v. M22 LLC*, No. 16-cv-

1084, 2017 WL 1420007, at *2 (W.D. Mich. Apr. 21, 2017) (discussing *MedImmune*). Nevertheless, a "reasonable apprehension of imminent suit" may serve as a basis to grant a court jurisdiction over a declaratory action. *Id.*

Heritage has established the existence of a case or controversy. Gibson charged it with trademark infringement in the February 2020 letter. (2/20/2020 Letter, PageID.671 ("[Y]ou will recall we had notified you of Heritage's . . . infringement of Gibson's trademarks.").) Though the many cease-and-desist letters also indicated Gibson's desire to resolve the dispute without litigation, Gibson also consistently demonstrated its willingness to sue, if necessary. The February 2020 letter noted Heritage's purported failure to comply with the 1991 settlement agreement despite Gibson's admonishments. Considering the multiple cease-and-desist letters and Heritage's repeated refusal to change its guitar designs, it was perfectly reasonable for Heritage to assume that Gibson would file suit. The circumstances here show a substantial controversy between parties with adverse legal interests "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127. The Court has subject matter jurisdiction.

Gibson argues that the Court cannot exercise jurisdiction over this case because it is unripe. The settlement agreement provides that "[i]n the event either party believes the other has violated the terms of this Agreement, it shall give written notice of the breach to the other party who shall then have thirty days to cure the alleged violation" before a lawsuit may be filed. Gibson claims that this notice-and-cure period was triggered on February 20, 2020, the date of the cease-and-desist letter. Thus, Gibson argues this lawsuit is unripe because, by the terms of the settlement agreement, it was not permitted to sue Heritage over the alleged infringement until March 21.

This misconstrues the facts. The February 2020 letter stated "Gibson has given several months' notice to cure [Heritage's] breach" of the settlement agreement. (2/20/2020 Letter,

7

PageID.673.) By Gibson's own admission, the notice-and-cure period mandated by the settlement agreement had lapsed. In February 2020, the company could have issued a summons instead of a cease-and-desist letter. Gibson's argument that this case is unripe because the underlying claim is unripe fails. The Court has subject matter jurisdiction.

### 2. Discretionary jurisdiction

A court with subject matter jurisdiction over a declaratory action may nevertheless decline to exercise that jurisdiction. The Sixth Circuit provides a five-factor test to determine the propriety of hearing a declaratory action:

(1) whether the judgment would settle the controversy;

(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(5) whether there is an alternative remedy that is better or more effective.

*AmSouth Bank v. Dale*, 386 F.3d 763, 785 (6th Cir. 2004) (quoting *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)).

The Court finds that the first two factors favor exercise of jurisdiction and that the remaining factors are neutral.

### (a) Judgment would settle the controversy

Gibson argues a judgment would not settle the controversy because there is no underlying controversy. This contention rests on the claim that the notice-and-cure period had not lapsed, preventing Gibson from suing for infringement. As explained above, Gibson itself stated that the notice-and-cure period had expired.

8

Heritage, on the other hand, argues that this entire case rests on two central premises: (1) whether the 1991 settlement agreement permits (or prohibits) the guitar designs used by Heritage; and (2) whether those designs infringe Gibson's registered trademarks for the Les Paul and ES guitar body shapes. These two questions would also underpin any lawsuit that Gibson would have brought in this matter – Gibson's many cease-and-desist letters assert that Heritage was infringing its trademarks and violating the settlement agreement. A declaratory judgment would settle the underlying controversy: can Heritage's guitars look the way they do, or must they change? This factor favors exercising jurisdiction.

### (b) Judgment would clarify the legal relations at issue

"Because it is almost always the case that if a declaratory judgment will settle the controversy, it will clarify the legal relations in issue, the inquiries required by [the first two factors] often overlap significantly." *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 397 (6th Cir. 2019) (internal quotation marks omitted).

Gibson's central complaint is that the body shape of many of Heritage's guitars infringe its trademarks and violate the 1991 settlement agreement. Heritage contends that the 1991 settlement agreement affirmatively permits it to use the challenged designs. Heritage also argues that, even if the settlement agreement did not create such a right, equity demands that it be permitted to continue using the challenged designs, given that it has done so for nearly thirty years. Gibson says Heritage waived those equitable rights in the settlement agreement. Finally, Heritage seeks to cancel two trademark registrations, while Gibson claims that the settlement agreement expressly prohibits Heritage from doing so.

These disputes all trace back to the 1991 settlement agreement and the legal rights it created (and extinguished) between Gibson and Heritage. A declaratory judgment would clarify the legal relations at issue in this case. This factor favors exercising jurisdiction.

9

### (c) It is not clear if Heritage engaged in procedural fencing

"Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *AmSouth Bank*, 386 F.3d at 788.  Moreover, "[a]llowing declaratory actions in [such] situations can deter settlement negotiations and encourage races to the courthouse, as potential plaintiffs must file before approaching defendants for settlement negotiations under pain of a declaratory suit." *Id.*

Gibson correctly argues that it is the natural plaintiff in this case.  It also says that Heritage raced to the courthouse to prevent this case from being heard in Tennessee, preferring to litigate the matter in Michigan.  By Gibson's account, the two companies were in the middle of settlement negotiations.  The February 2020 letter gave Heritage until March 5, 2020, to agree to Gibson's demands.  Gibson asserts that Heritage requested an extension until March 13, 2020, to respond to the letter, which Gibson allowed in an act of good faith. (Br., PageID.304.)  Instead, Heritage filed the instant action on March 13. (*See* Compl.)

It is true that courts look unfavorably on would-be defendants employing deceptive tactics to delay the filing of a lawsuit so that they can beat the would-be plaintiffs to the courthouse and secure a preferred forum.  *See, e.g.*, *AmSouth Bank*, 386 F.3d at 789-90 (plaintiff engaged in procedural fencing when indicating willingness to consider settlement while simultaneously drafting complaint, requesting a settlement demand, and communicated it would be responding just a day prior to filing suit); *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 435-36 (6th Cir. 2001) (procedural fencing where plaintiff requested extension of time to respond to settlement demand after hiring new lawyer, filed suit within the extension period without telling defendants, and did not notify defendants of suit for two months).  Assuming Gibson's claim is true, the Court is unenthused by the idea of exercising jurisdiction in a

declaratory action where the plaintiff requested a one-week extension and then apparently used the time to draft and file a complaint. However, Heritage's alleged misconduct does not appear as pervasive as the actions considered by the Sixth Circuit in *AmSouth Bank* and *Zide Sport Shop*.[3]

At any rate, there is a deeper deficiency: Gibson has not placed any evidence in the record showing that Heritage asked for an extension of the March 5 deadline. It merely asserts that in its brief. Heritage does not respond to this contention one way or the other. It could be that Heritage simply missed the deadline, without any extension, and still managed to file a lawsuit before Gibson. The Court is "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 558 (6th Cir. 2008). From the record, the Court knows that Gibson set a March 5 deadline in its February 2020 letter, and that Heritage filed this declaratory action on March 13. The Court will not infer bad faith from such thin evidence. This factor is neutral on the question of exercising jurisdiction.

### (d) Declaratory action does not encroach on state jurisdiction

The fourth factor "takes into consideration 'which court, federal or state, is in a better position to resolve the issues in the declaratory action.'" *Byler v. Air Methods Corp.*, 823 F. App'x 356, 366 (6th Cir. 2020) (quoting *Flowers*, 513 F.3d at 560).

Gibson argues that it "could have" brought a breach of contract claim in Tennessee state court. (Def.'s Br., PageID.312.) It has not done so. Granted, the 1991 settlement agreement is governed by Tennessee law; the Court is capable of interpreting and applying that body of law. But this factor is not even implicated where, as here, the defendant in the declaratory suit has not filed an action in a state court. *See Byler*, 823 F. App'x at 367 (fourth factor did not militate against

---

[3] These cases deal with the "first to file rule," which may not be applicable here since Gibson has not itself filed a lawsuit.

11

exercising jurisdiction where there was "no allegation or evidence in the record that there are pending coercive actions by [the defendant] against the plaintiffs in state court."). There is no state jurisdiction that this Court could encroach on.

### (e) Alternative remedies

Gibson proposes two alternative remedies: (1) "dismiss[ing] this action and requir[ing] the parties to comply with the 30-day cure provision in the contract before any court entertains a lawsuit between the parties"; and (2) "transfer[ring] the case to the Middle District of Tennessee, so it can apply Tennessee law to the present dispute." (Def.'s Br., PageID.312.) The first proposed remedy fails because the cure provision has, in fact, lapsed. With respect to the second remedy, the Court is willing to concede that a federal judge in Tennessee might have a better command of Tennessee law compared to a federal judge in Michigan. Either way, Gibson apparently does not anticipate having a Tennessee judge adjudicate the matter. And federal courts are presumed capable of applying state law when necessary. Gibson has not demonstrated that the state law issues involved, sounding in contract, are substantially different or more complex than any other body of contract law.

This factor is neutral or very slightly favors Gibson. It is not enough to overcome the first two factors, which favor exercising jurisdiction, where the third and fourth factors are neutral on the question. The Court will not decline to hear this case.

### B. Equitable Defenses

Gibson also asks the Court to dismiss Counts IV and VII-XII of Heritage's complaint,[4] arguing they are precluded by certain provisions of the 1991 settlement agreement. Counts IV,

---

[4] Gibson actually requests dismissal of Counts IV-VII and states that those Counts relate to invalidity, cancellation, laches, waiver, estoppel, and acquiescence. (Br., PageID.305.) Gibson misidentifies the Counts raising those claims for relief. Because it is clear which claims to relief Gibson is challenging, the Court will treat the motion to dismiss as relating to Counts IV and VII-XII.

VII, and VIII assert that Gibson's trademarks for the Les Paul and ES body shape designs are invalid, unenforceable, and should be cancelled. Counts IX-XII raise various equitable defenses that allegedly prevent Gibson from suing Heritage for infringement. Because the 1991 settlement agreement is referenced in the complaint and central to Heritage's claims, the Court may refer to the agreement's provisions in deciding whether to dismiss the challenged counts.

Before addressing the substance of the parties' arguments, the Court also notes that the 1991 settlement agreement is governed by Tennessee law. The Court will therefore apply Tennessee's contract law in interpreting the settlement agreement. In Tennessee, "[a] cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties." *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009). Interpretation begins by "examining the plain and ordinary meaning of the written words that are 'contained within the four corners of the contract.'" *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013) (quoting *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011)). "The literal meaning of the contract language controls if the language is clear and unambiguous." *Id.* (citing *Allmand*, 292 S.W.3d at 630). As will be discussed below, two provisions from the settlement agreement are at issue, and both are clear and unambiguous in their meaning.

### 1. Counts IV, VII-VIII

Count IV seeks a declaration that U.S. Registration No. 1782606, the Les Paul guitar body shape design, has "become generic for guitars since 1991" and is therefore invalid and unenforceable. (Compl., PageID.72-73.) Count VII makes the same claim with respect to U.S. Registration No. 2007277, the ES guitar body shape design. (*Id.*, PageID.74.) Count VIII requests cancellation of U.S. Registration Nos. 1782606 and 2007277. (*Id.*, PageID.75.)

Gibson argues that Heritage cannot bring these claims because paragraph 2 of the 1991 settlement agreement states that "Heritage agrees that they have waived any right to challenge the

asserted validity of the unregistered trademarks [described in this agreement] and are estopped from doing so in the future." (1991 Settlement Agreement, PageID.130.) The Les Paul and ES body shapes are two of the five unregistered trademarks asserted by Gibson in the settlement agreement. (*Id.*, PageID.129.)[5]

Heritage asserts that the ES body shape "was not one of the 'unregistered trademarks' subject to the Settlement Agreement." (Pl.'s Br., ECF No. 48, PageID.515.) The ES body shape is plainly one of the unregistered trademarks covered by the settlement agreement. (*See also* 1991 Settlement Agreement, PageID.142 (visual depiction of ES "double cutaway" body shape design).) Heritage also contends that the waiver provision in the settlement agreement does not prevent it from arguing that the designs at issue have become generic since the date of the settlement agreement. (Pl.'s Br., PageID.516.) The Court disagrees. To say that the designs have become generic is to say that Gibson's trademarks are invalid. *See Gen. Conf. Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 412 (6th Cir. 2010) ("A generic mark cannot be protected as a trademark."). Paragraph 2 of the settlement agreement is unambiguous: Heritage permanently waived the right to challenge the validity of the trademarks contemplated by the agreement. Heritage's arguments to the contrary are unavailing. Counts IV, VII, and VIII will be dismissed.

### 2. Counts IX-XII

Count IX claims that the equitable doctrine of laches bars Gibson from suing Heritage over its alleged infringement of the Les Paul and ES body shapes. (Compl., PageID.75-76.) Count X avers that Gibson is estopped from suing given its failure to enforce its rights in the past. (*Id.*, PageID.77.) Count XI makes the same argument with respect to acquiescence. (*Id.*, PageID.78.)

---

[5] The Les Paul body shape design was registered in 1993 and the ES body shape design was registered in 1996. *See* U.S. Registration Nos. 1782606, 2007277.

Finally, Count XII asserts that Gibson's failure to act amounts to a waiver of its rights. (*Id.*, PageID.79.)

There is a fundamental premise underlying these Counts: In 2020, Gibson claimed that certain Heritage models infringed its trademarks. Yet Heritage has always made guitars that are virtually identical to the challenged models. To allow Gibson to sue *now*, where the alleged infringement has been going on since at least the 1991 settlement agreement, would violate basic principles of equity.

Gibson argues that paragraph 18 of the settlement agreement prevents Heritage from raising these equitable arguments. Paragraph 18 states:

> Waiver by any party of any breach of this Agreement shall not be deemed a waiver of similar or other breaches hereof, nor shall the failure of any party to take any action by reason of such breach deprive such party of the right to take such action *at any time while such breach continues*.

(1991 Settlement Agreement, PageID.137 (emphasis added).)

The problem for Heritage is that, taking its allegations as true, it has *always* made guitars featuring the challenged body shapes. Thus, the breach alleged by Gibson is ongoing. A plain reading of paragraph 18 demonstrates that Gibson has not waived the right to enforce its trademarks here because the breach alleged has apparently been continuing, nonstop, since at least 1991.

Heritage counters that a contract cannot strip the Court of its powers of equity, and that the application of equitable doctrines "lies within the sound discretion of the trial court." *In re Estate of Baker v. King*, 207 S.W.3d 254, 264 (Tenn. Ct. App. 2006). Here, the Court exercises its discretion to hold Heritage to its word. The settlement agreement states that neither party waives its right to sue over an alleged breach of the agreement so long as that breach is continuing at the time the suit is filed. To be clear, the Court's ruling does not preclude Heritage from arguing that

15

the challenged models do, in fact, comply with the settlement agreement. But paragraph 18 makes it difficult for a party to waive its right to sue through inaction. Counts IX-XII will be dismissed.

### C. Motion to Transfer Venue

Finally, Gibson asks the Court to transfer this case to the Middle District of Tennessee as an alternative to dismissing the complaint outright. The Court will deny this request.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Courts must balance "a number of case-specific factors," *id.*, that relate to "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006) (quoting *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)) (internal quotation marks omitted). Other private interests include "the location of sources of proof"; "the location of the events that gave rise to the dispute"; and "the plaintiff's choice of forum." *Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 877 (M.D. Tenn. 2019).

Gibson argues in favor of transfer because a purportedly key witness, David Berryman, lives in Nashville, Tennessee, outside this Court's subpoena power.[6] Berryman signed the 1991

---

[6] "A subpoena may command a person to attend a trial, hearing, or deposition only . . . within 100 miles of where the person resides, is employed or regularly transacts business in person[.]" Fed. R. Civ. P. 45(c)(1)(A). Nashville is more than 100 miles from the courthouse in Lansing, Michigan.

16

settlement agreement on Gibson's behalf but no longer works for the company. Gibson does not say why Berryman will be an important witness in this case. The company also says that relevant sources of proof, such as the 1991 settlement agreement and trademark registration certificates, are located at corporate headquarters in Nashville. The Court does not understand why these documents cannot be placed into the electronic docket.[7] Gibson further argues that events giving rise to this suit occurred in Tennessee because that is where the litigation resulting in the settlement agreement took place and is also where Gibson currently manufactures guitars. But what really matters is where Heritage, not Gibson, makes guitars, since that is where the alleged infringement is occurring. Gibson also claims that, as the natural plaintiff, the public interest is best served by transferring this case to Tennessee to have "a Tennessee court apply its law to this case." (Def.'s Br., PageID.317.) That makes no sense because if the Court granted this motion, the case would not be transferred to a Tennessee court, it would simply be transferred to a *federal* court *in* Tennessee.

Heritage counters that it has its own witnesses, events, and sources of proof to consider, all of which are found in Michigan. Heritage is also the plaintiff in this case, meaning its choice of forum is entitled to deference. Gibson points out that, while a "'plaintiff's choice of forum is ordinarily entitled to some deference, it should carry less weight in a declaratory judgment action.'" (Def.'s Br., PageID.318 (quoting *Cincinnati Ins. Co. v. O'Leary Paint Co.*, 676 F. Supp. 2d 623, 631 (W.D. Mich. 2009)).) But Heritage's choice is still entitled to *some* deference, even as a plaintiff in a declaratory action. Heritage has at least as compelling a case for litigating this issue in Michigan as Gibson does for trying the matter in Tennessee. Whatever amount of

---

[7] In fact, the settlement agreement has already been placed in the docket.

17

deference should be afforded to Heritage, it is enough.  The Court will deny Gibson's motion to transfer the case to the Middle District of Tennessee.

### IV. Conclusion

For the foregoing reasons, the Court will grant Gibson's motion to dismiss in part and deny it in part.  The Court will not dismiss the case for lack of subject matter jurisdiction, and it will not decline jurisdiction.  The Court will not transfer the case to the Middle District of Tennessee.  The Court will dismiss Counts IV and VII-XII.  An order will enter consistent with this Opinion.

Dated:   March 10, 2021                            /s/ Hala Y. Jarbou
                                                   HALA Y. JARBOU
                                                   UNITED STATES DISTRICT JUDGE