UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HERITAGE GUITAR, INC.,                    Case No. 20-cv-229

      Plaintiff,                          Honorable Hala Y. Jarbou

v.                                        Magistrate Judge Ray Kent

GIBSON BRANDS, INC.,

      Defendant.

---

### <u>HERITAGE GUITAR, INC'S ANSWER AND DEFENSES TO COUNTERCLAIMS</u>

Plaintiff Heritage Guitar, Inc., ("Heritage"), by and through their undersigned counsel, hereby answer and assert affirmative defenses and other defenses.  Except as hereinafter expressly admitted, qualified, or otherwise answered, Heritage denies each and every allegation and assertion set forth in Gibson Brands, Inc.'s ("Gibson") counterclaims (the "Counterclaims").[1]  The paragraphs that follow align with the numbered paragraphs in the Counterclaims, and the affirmative defenses are asserted thereafter.

### <u>COUNTERCLAIMS</u>[2]

Defendant Gibson Brands., Inc. ("Gibson" or "Defendant") files its Counterclaims against Plaintiff Heritage Guitar, Inc. ("Heritage" or "Plaintiff") and alleges as follows:

### <u>Nature of Action</u>

This is an action for breach of contract, trademark infringement, unfair competition, and

---

[1] Gibson's Counterclaims are in violation of Local Civil Rule 8.2 because Gibson failed to recite the paragraphs from Heritage's Complaint before providing its response.  *See* LCivR 8.2 ("[A] responsive pleading … shall recite verbatim that paragraph of the pleading, … to which it is responsive, followed by the response.").

[2] The repetition of the headings and subheadings contained in the Counterclaims is not an adoption of those headings, nor an admission of their truth.  Rather, Heritage includes those

other related causes of action under federal, state and common law arising from Plaintiff

Heritage's breach of the parties' Settlement Agreement, unauthorized use of ███████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████ in the United States. (collectively "Gibson Trademarks").

ANSWER:  Admit that Gibson filed certain counterclaims against Heritage.  Heritage

otherwise denies the allegations in the preceding paragraph.

## The Parties

1.      Defendant Gibson is a Delaware corporation with a principal place of business at

309 Plus Park Boulevard, Nashville, Tennessee 37217.

ANSWER:  Admit.

2.      Upon information and belief, Plaintiff Heritage is a corporation organized and

existing under the laws of the state of Michigan, with its principal place of business at 225

Parsons Street, Kalamazoo, Michigan 49007.

ANSWER:  Admit.

## Jurisdiction and Venue

3.      Original subject matter jurisdiction of this Court is based on 28 U.S.C. § 1331

(federal question), 28 U.S.C. §1338(a) and (b) (Acts of Congress relating to trademarks and

related actions), Sections 39 and 43(a) and (c) of the United States Trademark Act of 1946

("Lanham Act"), as amended (15 U.S.C. §1121 and 1125(a)(c)). This court has supplemental

jurisdiction over Gibson's state law claims pursuant to 28 U.S.C. § 1367 (Supplemental

Jurisdiction) because they are substantially related to Gibson's federal claims and arise out of the

same case or controversy, as well as the principles of pendent jurisdiction.

---

headings purely for the Court's ease of reference.

ANSWER:  The allegations in Paragraph 3 state a legal conclusion to which no response is required.  To the extent a response is required, Heritage denies the allegations.

4.      Subject matter jurisdiction of this Court is also based on 28 U.S.C. § 1332 (diversity jurisdiction) because complete diversity exists between the parties and the amount in controversy requirement is met:  Gibson is a citizen of Delaware and Tennessee, and Heritage is a citizen of Michigan, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

ANSWER:  The allegations in Paragraph 4 state a legal conclusion to which no response is required.  To the extent a response is required, Heritage denies the allegations.

5.      This action arises out of wrongful acts including advertising, offering for sale, and distributing infringing products by Heritage and use of the GIBSON® name and Gibson Trademarks within this judicial district.  This Court has personal jurisdiction over Plaintiff as a citizen of Michigan.

ANSWER:  Heritage admits that this Court has personal jurisdiction over Heritage as a citizen of Michigan.  Heritage otherwise denies the allegations in Paragraph 5.

6.      Venue is proper in this district under 28 U.S.C. §1391(b) and (c), as Heritage is subject to personal jurisdiction in this District and a substantial part of the events giving rise to these claims occurred in this District.

ANSWER:  Admit.

**Gibson's Use and Ownership of its Marks**

7.      Gibson is engaged in the business of developing, manufacturing and selling musical instruments, including electric guitars, acoustic guitars, basses, mandolins, and other stringed instruments under the famous GIBSON® Trademark for over a century.  Gibson is the

sole and exclusive owner of the GIBSON Trademark(s) U.S. Reg. Nos. 0866698, 1545311, 0510594. A copy of these registrations are attached hereto as Exhibit "**A**."

ANSWER:  Heritage admits that Gibson manufactures and sells musical instruments, including guitars.  Heritage admits that Gibson purports to be the sole owner of U.S. Trademark Reg. No. 0866698, 1545311, and 0510594, and that Exhibit A purports to be a copy of the registration certificates for U.S. Trademark Reg. Nos. 0866698, 1545311, and 0510594. Heritage denies the remaining allegations in Paragraph 7.

8.     Gibson guitars are sold worldwide. Gibson's instruments have gained worldwide recognition and reputation, winning awards for their designs.

ANSWER:  Without sufficient information, Heritage denies the allegations in Paragraph 8.

9.     Gibson is the sole owner of the distinctive design mark Les Paul Body Design®, U.S. Trademark Reg. No. 1782606. This trademark was issued by the U.S. Patent and Trademark Office on July 20, 1993, and has been continuously and exclusively used in commerce by Gibson since 1952. A copy of the Trademark's registration is attached hereto as Exhibit "**B**."

ANSWER:  Heritage admits that Gibson purports to be the sole owner of U.S. Trademark Reg. No. 1782606, that U.S. Trademark Reg. No. 1782606 was issued by the U.S. Patent and Trademark Office on July 20, 1993, and that Exhibit B purports to be a copy of the registration certificate for U.S. Trademark Reg. No. 1782606.  Heritage denies the remaining allegations in Paragraph 9.

10.     Gibson is the sole owner of the distinctive design mark ES Body Design®, U.S. Trademark Reg. No. 2007277. This trademark was issued on the supplemental registry by

the U.S. Patent and Trademark Office on October 8, 1996 and has been continuously and exclusively used in commerce by Gibson since 1958. A copy of the Trademark's registration is attached hereto as Exhibit "**C**."

ANSWER:  Heritage admits that Gibson purports to be the sole owner of the distinctive design mark ES Body Design®, U.S. Trademark Reg. No. 2007277, that U.S. Trademark Reg. No. 2007277 was issued by the U.S. Patent and Trademark Office on October 8, 1996, and that Exhibit C purports to be a copy of the registration certificate for U.S. Trademark Reg. No. 2007277.  Heritage denies the remaining allegations in Paragraph 10.

11.     Gibson has spent ▮▮▮▮▮▮▮▮▮▮ in the advertising and promotion of the Gibson Trademarks, which have been used in conjunction with various Gibson stringed instruments.

ANSWER:  Without sufficient information, Heritage denies the allegations in Paragraph 11.

12.     Gibson has sold ▮▮▮▮▮▮▮▮▮ bearing the Gibson Trademarks.

ANSWER:  Without sufficient information, Heritage denies the allegations in Paragraph 12.

13.     Gibson authorized dealers sell products bearing the Gibson Trademarks in every state in the United States and numerous countries around the world.

ANSWER:  Without sufficient information, Heritage denies the allegations in Paragraph 13.

14.     Gibson products bearing the Gibson Trademarks are featured in nearly every trade magazine that includes guitars.

ANSWER:  Without sufficient information, Heritage denies the allegations in Paragraph

14.

15.     As a result of the quality of Gibson's products and the extensive sales, licensing and marketing, advertising and promotion of these products under the Gibson Trademarks, the Gibson Trademarks have become famous trademarks that are widely and favorably known by the general consumers in Michigan, in the United States, and elsewhere as designating high quality and dependable products originating exclusively from Gibson and its related companies. As a direct result of Gibson's promotional efforts and extensive sales, the Gibson Trademarks have been prominently placed in the minds of the public. The Gibson Trademarks are distinctive designs and word marks owned exclusively by Gibson, achieving secondary meaning from over 50 years of use with Gibson spending millions of dollars on promotion of the Gibson Trademarks.

ANSWER:  Deny.

16.     Consumers are exposed to the Gibson Trademarks through magazines, newspapers, television, and the Internet.   As a result, the Gibson Trademarks have become widely known and valuable trademarks, possessing a strong secondary meaning among consumers. Consequently, the Gibson Trademarks have come to symbolize the enormous goodwill of Gibson's business in Michigan, in the United States, nationwide, and elsewhere. No other manufacturer lawfully uses the Gibson Trademarks or any other substantially similar marks for similar types of goods without Gibson's authorization.

ANSWER:  Without sufficient information, Heritage denies the allegations in the first sentence of Paragraph 16.  Heritage otherwise denies the remainder of the allegations in Paragraph 16.

17.     The Gibson Trademarks have been famous in Michigan, in the United States,

nationwide, and elsewhere since long prior to the acts complained of herein. The Gibson Trademarks have been used exclusively nationwide and have been used exclusively by Gibson.

ANSWER:  Deny.

18.    The above-identified registrations remain in full force and effect and are prima facie proof of Gibson's exclusive right to own and use GIBSON ®, the Les Paul Body Shape Design® Trademark, and the ES Body Shape Design® Trademark. In addition, the Les Paul Body Shape Design® Trademark is incontestable pursuant to Section 15 of the Lanham Act (15 U.S.C. § 1065).

ANSWER:  The allegations in Paragraph 18 state a legal conclusion to which no response is required.  To the extent a response is required, Heritage denies the allegations.

**The Settlement Agreement**

19.    Gibson and Heritage were previously involved in litigation styled *Gibson Guitar Corp. v. Heritage Guitar, Inc. and Lasar Muysic Corp.*, Civil Action No. 3-90-0009, in the United States District Court for the Middle District of Tennessee, Nashville Division, and an opposition proceeding styled *Heritage Guitar, Inc. v. Gibson Guitar Corp.*, Opposition No. 80,847, before the United States Trademark Trial and Appeal Board.

ANSWER:  Admit.

20.    The parties resolved both the litigation and the opposition by way of a Settlement Agreement ███████████████████████████████████████████
████████████████████████

ANSWER:  Admit.

21.    Pursuant to the 1991 Settlement Agreement, ████████████████████████
████████████████████████████████████████████████████████

7

████████████████████████████████████████████

ANSWER:   Paragraph 21 purports to characterize a provision of the Settlement Agreement, and Heritage respectfully refers the Court to the Settlement Agreement for a complete and accurate statement of its terms.  Heritage denies the allegations in Paragraph 21 on that basis.

22.     Heritage is selling guitars in the United States that are in ███████████ ████████████████████████████████████████████

ANSWER:  Deny.

23.     Prior to filing these counterclaims, Gibson provided Heritage notice of its breach of the ████████████ and allowed Heritage an opportunity to cure the breach, but Heritage refused to do so.  [*See* Cease and Desist Letters referenced in Paragraph 32 below.]

ANSWER:  Deny.

24.     All conditions precedent in the 1991 Settlement Agreement are met prior to bringing these counterclaims.

ANSWER:   Paragraph 24 purports to characterize a provision of the Settlement Agreement, and Heritage respectfully refers the Court to the Settlement Agreement for a complete and accurate statement of its terms.  Heritage denies the allegations in Paragraph 24 on that basis.

### Heritage's Misuse of The Gibson Trademarks

25.     Upon information and belief, Heritage offers for sale, sells, and distributes electric guitars in the United States using Gibson's Les Paul Body Shape Design® Trademark and ES Body Shape Design® Trademark ("Heritage's Unauthorized Products") through its business, catalogs, distributors, its websites at www.heritageguitars.com. Heritage also uses the

GIBSON® name on its website and building, implying that it is the original Gibson. Examples of Heritage's Unauthorized Products and use on its website are attached hereto as Exhibit "**E**."

ANSWER: Heritage admits that it offers for sale, sells, and distributes electric guitars in the United States through its business, catalogs, distributors, and its website at www.heritageguitars.com. Heritage otherwise denies the allegations in Paragraph 25.

26.     Heritage is not an authorized retailer or distributor for any goods bearing the Gibson Trademarks and has not acquired the goods from Gibson.

ANSWER: Deny.

27.     Upon information and belief, notwithstanding the lack of authorization from Gibson and the fact that said Heritage's Unauthorized Products and use of the GIBSON® name otherwise are not authorized to be sold utilizing the Gibson Trademarks, Heritage has made repeated unauthorized use of the Gibson Trademarks in connection with said products, as described below, with the intent to mislead and confuse consumers into believing that said Heritage's Unauthorized Products are made directly by Gibson pursuant to Gibson's strict quality control standards or that said Heritage's Unauthorized Products are otherwise authorized, licensed, or sponsored by Gibson and with the intent of misappropriating, for its own benefit the tremendous goodwill built up by Gibson in the Gibson Trademarks. [*See* Exhibit "**E**."]

ANSWER: Deny.

28.     In particular, Heritage has improperly used the Gibson Trademarks in its advertising and promotional materials for said Heritage's Unauthorized Products on its websites at www.heritageguitars.com and has thus falsely stated or otherwise implied that said Heritage's Unauthorized Products are made directly by Gibson pursuant to Gibson's strict quality control

9

standards or that its use of the Gibson Trademarks is authorized or licensed by Gibson.

ANSWER:  Deny.

29.    Gibson is informed and believes, and thereon alleges that, Heritage is or has been directly and indirectly advertising and selling Heritage's Unauthorized Products bearing the Gibson Trademarks through its catalogs, distributors, building and its websites at www.heritageguitars.com.

ANSWER:  Heritage admits that it is or has been directly and indirectly advertising and selling electric guitars through its catalogs, distributors, and its website at www.heritageguitars.com.  Heritage otherwise denies the remaining allegations in Paragraph 29.

30.    Upon information and belief, the aforementioned misuse of the Gibson Trademarks by Heritage was done with the intent of deceiving or misleading customers into mistakenly believing that said Heritage's Unauthorized Products and services were authorized Gibson products originating from Gibson or its related companies and otherwise misappropriating the goodwill built up by Gibson in the Gibson Trademarks and otherwise attracting and misdirecting consumers looking for genuine or authorized Gibson goods to Heritage's Unauthorized Products.

ANSWER:  Deny.

31.    Upon information and belief, Heritage had constructive knowledge that Heritage's Unauthorized Products and services were infringing the Gibson Trademarks. The Gibson Trademarks are registered in the United States.

ANSWER:  Deny.

32.    Heritage has actual knowledge of the infringement of the Gibson Trademarks by Heritage's Unauthorized Products ███████████████████████. Furthermore, Gibson

contacted Heritage on February 3, 2015, May 24, 2019, and February 20, 2020 via cease-and-desist letters describing the infringement of Heritage's Unauthorized Products.  [███████ ████████████████ ]

ANSWER:  The first sentence of Paragraph 32 purports to characterize a provision of the Settlement Agreement, and Heritage respectfully refers the Court to the Settlement Agreement for a complete and accurate statement of its terms.  Heritage denies the first sentence in Paragraph 32 on that basis.  Heritage otherwise admits that Gibson has repeatedly threatened Heritage with litigation via cease-and-desist letters, including those dated February 26, 2019, May 24, 2019, and February 20, 2020.  Heritage denies the remaining allegations in Paragraph 32.

33.    Despite its constructive and actual knowledge of the infringement of the Gibson Trademarks by Heritage's Unauthorized Products, Heritage has continued to directly and indirectly advertise and sell Heritage's Unauthorized Products bearing the Gibson Trademarks through its catalogs, distributors, and its websites at www.heritageguitars.com and provide Heritage's Unauthorized Products to distributors whom then sell Heritage's Unauthorized Products to the end consumer and use the GIBSON® brand on its website under the "about us" and on the building, itself.

ANSWER:  Deny.

34.    Prior to bringing these counterclaims, Gibson and its representatives communicated directly with Heritage's counsel in an attempt to resolve this matter without the necessity of bringing these counterclaims, but Heritage has failed to cease all unauthorized use of the Gibson Trademarks as requested by Gibson and continues to deliberately and intentionally use the Gibson Trademarks without the consent of Gibson.

ANSWER:  Heritage admits that Gibson and its representatives have communicated directly with Heritage, but denies all other allegations in Paragraph 34.

35.     The misuse of the Gibson Trademarks by Heritage was intended to cause, has caused, and is likely to continue to cause, consumer confusion, mistake or deception including the misleading of consumers into mistakenly believing that Heritage's Unauthorized Products and services are made directly by Gibson pursuant to Gibson's strict quality control standards or Gibson has authorized, licensed, or sponsored the use by Heritage of the Gibson Trademarks for those products and services.

ANSWER:  Deny.

36.     The aforementioned misuse of the Gibson Trademarks by Heritage is damaging to the reputation and goodwill of Gibson and the Gibson Trademarks.

ANSWER:  Deny.

37.     Upon information and belief, the aforesaid acts of Heritage have caused and, unless enjoined, will continue to cause irreparable damage to Gibson and to the reputation of its valuable Gibson Trademarks.

ANSWER:  Deny.

38.     Gibson has no adequate remedy at law.

ANSWER:  The allegations in Paragraph 38 state a legal conclusion to which no response is required.  To the extent a response is required, Heritage denies the allegations.

## COUNT I
## Breach of Contract

39.     Gibson repeats the allegations set forth in Paragraphs 1 through 38 as if fully set forth herein.

ANSWER:  Heritage incorporates by reference its responses to each allegation above as

12

if set forth fully herein.

40.   ████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

ANSWER:   Paragraph 40 purports to characterize a provision of the Settlement Agreement, and Heritage respectfully refers the Court to the Settlement Agreement for a complete and accurate statement of its terms.  Heritage denies the allegations in Paragraph 40 on that basis.

41.   Heritage is selling guitars in the United States that are in ███████████ ████████████████████████████████████████████.

ANSWER:  Deny.

42.   As a result of Heritage's breach of the ████████████████, Gibson had been damaged in an amount to be proved at trial.

ANSWER:  Deny.

43.   As a direct and proximate result of Heritage's breach of contract, Gibson is entitled to a restraining order, preliminary injective relief, attorneys' fees and costs, and damages.

ANSWER:  Deny.

## COUNT II
**Trademark Infringement Under the United States Trademark Act (15 U.S.C. § 1114(1))**

44.   Gibson repeats the allegations set forth in Paragraphs 1 through 43 as if fully set forth herein.

ANSWER:  Heritage incorporates by reference its responses to each allegation above as if set forth fully herein.

45.     Heritage's use of a reproduction, counterfeit, copy, or colorable imitation of the famous Gibson Trademarks, without Gibson's consent in commerce in connection with the sale, offering for sale, distribution, or advertising of their products or services is likely to cause confusion, or to cause mistake, or to deceive the public, and thus constitutes trademark infringement pursuant to 15 U.S.C. § 1114.

ANSWER:  Deny.

46.     The complained of acts constitute willful, deliberate and intentional infringement of Gibson's federally registered trademarks for the Gibson Trademark's in violation of Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)).

ANSWER:  Deny.

47.     Heritage's intentional and willful infringement of the Gibson Trademarks has cause, and will continue to cause, damage to Gibson and is causing irreparable harm to Gibson for which there is no adequate remedy at law. Heritage is directly liable for these actions.

ANSWER:  Deny.

## COUNT III
### Trademark Counterfeiting Under the United States Trademark Act (15 U.S.C. § 1114(1))

48.     Gibson repeats the allegations set forth in Paragraphs 1 through 47 as if fully set forth herein.

ANSWER:  Heritage incorporates by reference its responses to each allegation above as if set forth fully herein.

49.     Upon information and belief, Heritage intentionally and willfully used, without Gibson's consent, counterfeit versions of Gibson's Famous Les Paul Body Shape Design® knowing that the marks were counterfeit. Heritage used the counterfeit marks in connection with the sale, offering for sale, or distribution of its goods and services, which is likely to cause

confusion, or cause mistake, or deceive the public.

ANSWER: Deny.

50. Heritage uses the counterfeit marks on guitars, the identical goods Gibson's Les Paul Body Shape Design® Trademark is registered for.

ANSWER: Deny.

51. The complained of acts constitute trademark counterfeiting in violation of Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)).

ANSWER: Deny.

**COUNT IV**
**False Designation of Origin, Passing Off, and Unfair Competition Under the United States Trademark Act (15 U.S.C. § 1125(a))**

52. Gibson repeats the allegations set forth in Paragraphs 1 through 51 as if fully set forth herein.

ANSWER: Heritage incorporates by reference its responses to each allegation above as if set forth fully herein.

53. Heritage's use of the Gibson Trademarks, without Gibson's consent, in commerce to promote, market, or sell its products or services in direct competition with Gibson's products and services constitutes Unfair Competition pursuant to 15 U.S.C. § 1125(a). Heritage's use of the Gibson Trademark is a false designation of origin, a false or misleading description of fact, and/or a false or misleading representation of fact, which is likely to cause confusion, or cause mistake, or to deceive as to the affiliation, connection, or association of Heritage with Gibson and/or as to the origin, sponsorship, or approval of Heritage's products and commercial activities with Gibson.

ANSWER: Deny.

54.     The complained of acts constitute willful, deliberate, and intentional false designations of origin as to products made available by Heritage and unfair competition in violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

ANSWER:  Deny.

55.     Heritage's wrongful activities have caused – and unless enjoined by this Court – will continue to cause irreparable injury and other damages Gibson's business and reputation, and will continue to cause damage to the goodwill it has developed in its Gibson Trademarks. Gibson has no adequate remedy at law.

ANSWER:  Deny.

## COUNT V
## Trademark Infringement in Violation of Michigan Common Law

56.     Gibson repeats the allegations set forth in Paragraph 1 through 55 as if fully set forth herein.

ANSWER:  Heritage incorporates by reference its responses to each allegation above as if set forth fully herein.

57.     Gibson has a valid, legally protectable interest in the Gibson Trademarks.

ANSWER:  Deny.

58.     Heritage used the Gibson Trademarks in commerce to identify its own goods.

ANSWER:  Deny.

59.     Heritage did not have Gibson's consent, permission, or license to use the Gibson Trademarks.

ANSWER:  Deny.

60.     Heritage used the Gibson Trademarks with the intent to confuse consumers regarding the origins of Heritage's goods.

16

ANSWER:  Deny.

61.     Heritage's use of the Gibson Trademarks has caused consumer confusion, and will continue to cause confusion, regarding the origins of Heritage's products and servcies and has diminished Gibson's goodwill and ability to control the goods sold under the Gibson Trademarks.

ANSWER:  Deny.

62.     The complained of acts constitute trademark infringement in violation of the common law of the State of Michigan.

ANSWER:  Deny.

63.     Heritage acts have caused, and will continue to cause, Gibson to suffer damages.

ANSWER:  Deny.

## COUNT VI
## False Designation of Origin, Passing Off, and Unfair Competition in Violation of Michigan Common Law

64.     Gibson repeats the allegations set forth in Paragraphs 1 through 63 as if fully set forth herein.

ANSWER:  Heritage incorporates by reference its responses to each allegation above as if set forth fully herein.

65.     Through Heritage's use of the Gibson Trademarks in connection with its guitars and its manufacturing facility, Heritage is passing off its goods as those of Gibson's in a manner that is false, misleading, and misrepresentative of the nature, characteristics, and quality of Gibson's goods.

ANSWER:  Deny.

66.     Heritage misappropriated the Gibson Trademarks, in which Gibson created

through extensive resources, with the intent to free ride off of Gibson's goodwill and engage in direct competition with Gibson. Furthermore, Heritage has also misled the public into believing that it is affiliated with Gibson through misleading statement on its "About Us" portion of its website and GIBSON® on its building smokestack.

ANSWER:  Deny.

67.    As a direct and proximate result of Heritage's actions, Gibson has suffered and will continue to suffer damages, including irreparable damage to its goodwill and reputation.

ANSWER:  Deny.

68.    The complained of acts constitute unlawful acts of false designation of origin, passing off, unfair competition, and unlawful, unfair and fraudulent business practices in violation of the common law of the State of Michigan.

ANSWER:  Deny.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant Gibson Brands, Inc. prays for judgment as follows:

1.    That judgment be entered in favor of Defendant on all causes of action set forth herein.

2.    That in accordance with Section 35 of the Lanham Act (15 U.S.C. §1117), Defendant be awarded monetary damages sufficient to recover: (1) Plaintiff's profits on Plaintiff's Unauthorized Products; (2) all damage suffered by Defendant; and (3) the costs of this action and that said amount be trebled or otherwise multiplied to the extent permitted by statute. In addition, Defendant reserves the right to elect statutory damages up to and including $2,000,000 per counterfeit mark pursuant to 15 U.S.C. §1117(c).

3.    That Defendant be awarded such other monetary damages, recovery and

awardsas appropriate under the law.

4.     That Heritage, its officers, directors, principals, agents, servants, affiliates, employees, attorneys, representatives, successors and assigns, and all those in privy or acting in concert or participation with Heritage, and each and all of them, be preliminarily and permanently enjoined and restricted from directly or indirectly:

a.     claiming or representing that any products and/or services sold by Heritage are made directly by Gibson pursuant to Gibson's strict quality control standards or Gibson has authorized, licensed, or sponsored the use by Heritage of the Gibson Trademarks for those products;

b.     using, in any manner, or holding itself out as having rights to use Gibson'sGIBSON®, Les Paul Body Shape Design® Trademark, or ES Body Shape Design® Trademark, or any other name, mark or design confusingly similar to the Gibson Trademarks to designate, describe or refer to themselves or in conjunction with any product or service, including any use in conjunction with any Internet activities conducted by it or on its behalf such as any use as a domain name or in the text, graphics and hypertext metatags of any Internet website;

c.     requesting or inducing Internet search engines to display links to the Heritage's website or other websites displaying or promoting Heritage's products or services when potential customers using those search engines search for terms containing variations of GIBSON®, Gibson's Les Paul Body Shape Design® Trademark or ES Body Shape Design® Trademark;

d.     selling, offering for sale, promoting, advertising, distributing or providing or offering to provide any goods or services in conjunction with the Gibson Trademarks or any

other name, mark or design confusingly similar to the Gibson Trademarks in conjunction with any product or service; and

        e.        engaging in any course of conduct likely to cause confusion, deception or mistake or injure Defendant's business reputation or dilute the Gibson Trademarks or appropriate the goodwill and reputation of said marks or lead to the passing off of Heritage's products and services as Gibson products and services.

5.      That the Court issue an Order directing Heritage to file with the Court and serve on Defendant, within thirty (30) days after the service on Heritage of such injunctions, a report in writing and under oath, setting forth in detail the manner and form in which Heritage has complied with the injunction.

6.      That the Court award judgment in favor of the Defendant in the amount of treble damages.

7.      That the Court award to Defendant punitive damages sufficient to deter Heritage from committing such willful acts of infringement in the future.

8.      That the Court requires a full and complete accounting of all monies received by Heritage as a result of the infringement.

9.      That Heritage be required to deliver to Defendant all merchandise, packaging, labels, boxes, cartons, advertising, brochures, documents, advertising and promotional materials and other things, possessed, used or distributed by Plaintiff, or on its behalf, which use the Gibson Trademarks or any other name, mark or design confusingly similar to the Gibson Trademarks.

10.      That Defendant be awarded the costs of this action and its disbursements, and reasonable attorneys' and investigatory fees incurred, and as otherwise appropriate herein,

pursuant to 15 U.S.C. §1117 or other appropriate statute or law.

11.     For interest on all amounts found to be due to Defendant from Heritage, at the prevailing rate, from the date of said amounts or any part thereof became or becomes due.

12.     That the Court requires Heritage to notify its commercial associates, dealers, master distributors, suppliers and customers of this Order.

13.     That Defendant be granted such other monetary, equitable and further relief, as this Court may deem appropriate under federal, state and common law.

14.     That the Court retain jurisdiction of this action for the purpose of enabling Defendant to apply to the Court, at any time, for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any Order entered in this action, for the modification of any such Order, for the enforcement or compliance therewith and for the punishment of any violation thereof.

ANSWER:  Heritage states that no response is required to Gibson's request for relief.  To the extent that a response is required, Heritage denies that Gibson is entitled to the relief sought in the Counterclaims, or any relief at all.

## DEMAND FOR JURY TRIAL

Gibson hereby demands a jury trial on all issues.

ANSWER:  Heritage's Complaint also seeks a jury trial.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming any burden of proof, persuasion or production not otherwise legally assigned to it as to any element of any claim asserted in the Complaint, Heritage asserts the following affirmative and other defenses:

## FIRST AFFIRMATIVE DEFENSE

21

## FAILURE TO STATE A CLAIM

Gibson's Counterclaims against Heritage are barred, either in whole or in part, by Gibson's failure to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

## BARRED BY SETTLEMENT AGREEMENT

Gibson's Counterclaims against Heritage are barred, either in whole or in part, by the 1991 Settlement Agreement between the parties.  For example, as part of the Settlement Agreement, the parties agreed that future guitar models that were not explicitly approved in the Settlement Agreement would still not infringe any of Gibson's intellectual property rights as long as such designs were not "closer in appearance" to specific examples of Gibson guitars pictured in exhibits to the Settlement Agreement.  There is no basis to claim that the changes Heritage has made to its guitars somehow make Heritage's guitars "closer in appearance" to the identified Gibson guitars.

## THIRD AFFIRMATIVE DEFENSE

## NO LIKELIHOOD OF CONFUSION

Heritage's use of the single- and double-cut guitar designs do not include any confusingly similar variants of Gibson's trademarks.  Gibson's and Heritage's products have coexisted without confusion for nearly thirty years.  Additionally, the smokestack bearing the name "Gibson" is no longer in existence.  Accordingly, there is no likelihood of confusion. Furthermore, given the context in which the references to "Gibson" appear on Heritage's website and other statements and information on Heritage's website, there is no likelihood of confusion arising from those references.

## FOURTH AFFIRMATIVE DEFENSE

**FAIR USE**

Gibson's Counterclaims are barred, wither in whole or in part, by the doctrine of fair use. Any use of the name "Gibson" on Heritage's website or smokestack is descriptive in nature and is protected under the doctrine of fair use.  Gibson did in fact used to manufacture its guitars at what is now the Heritage factory on Parsons Street in Kalamazoo, Michigan, and Orville Gibson did begin his career in musical instrument manufacturing at Heritage's factory on Parsons Street in Kalamazoo, Michigan.

**FIFTH AFFIRMATIVE DEFENSE**

**WAIVER**

To the extent that Gibson's claims allege infringement of the "GIBSON" word mark (*i.e.*, the appearance of the word "Gibson" on the smokestack of the former Gibson factory that Gibson abandoned without removing the name, and the reference to the name "Orville Gibson" on Heritage's website accurately discussing the history of the factory at 225 Parsons Street, Kalamazoo), all such claims are barred by waiver.

**SIXTH AFFIRMATIVE DEFENSE**

**ESTOPPEL**

To the extent that Gibson's claims allege infringement of the "GIBSON" word mark (*i.e.*, the appearance of the word "Gibson" on the smokestack of the former Gibson factory that Gibson abandoned without removing the name, and the reference to the name "Orville Gibson" on Heritage's website accurately discussing the history of the factory at 225 Parsons Street, Kalamazoo), all such claims are barred by estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

### LACHES

To the extent that Gibson's claims allege infringement of the "GIBSON" word mark (*i.e.*, the appearance of the word "Gibson" on the smokestack of the former Gibson factory that Gibson abandoned without removing the name, and the reference to the name "Orville Gibson" on Heritage's website accurately discussing the history of the factory at 225 Parsons Street, Kalamazoo), all such claims are barred by laches.

## EIGHTH AFFIRMATIVE DEFENSE

### ACQUIESCENCE

To the extent that Gibson's claims allege infringement of the "GIBSON" word mark (*i.e.*, the appearance of the word "Gibson" on the smokestack of the former Gibson factory that Gibson abandoned without removing the name, and the reference to the name "Orville Gibson" on Heritage's website accurately discussing the history of the factory at 225 Parsons Street, Kalamazoo), all such claims are barred by acquiescence.

## NINTH AFFIRMATIVE DEFENSE

### STATUTE OF LIMITATIONS

Gibson's Counterclaims against Heritage are barred, either in whole or in part, by the statute of limitations.

## TENTH AFFIRMATIVE DEFENSE

### NO DAMAGES

Gibson cannot prove that it suffered any lost sales, lost goodwill, or other harm caused by the nearly 30-year-coexistence of Heritage's guitars.

## ELEVENTH AFFIRMATIVE DEFENSE

### ATTORNEYS' FEES

Gibson's Counterclaims fail to form the basis for an award of attorneys' fees pursuant to the Lanham Act, 15 U.S.C. § 1117(a). Gibson would not be entitled to an award of attorneys' fees or costs incurred to litigate Gibson's Counterclaims.

## TWELFTH AFFIRMATIVE DEFENSE

Heritage hereby reserves and asserts all affirmative and other defenses available under any applicable or state law. Heritage presently has insufficient knowledge or information upon which to form a basis as to whether it may have additional, as yet unstated, affirmative or other defenses available. Heritage has not knowingly or intentionally waived any applicable affirmative defenses and reserves the right to assert additional defenses, cross-claims, and third-party claims at any subsequent stage of this action in the event that discovery indicates that such additional defenses or claims would be appropriate.

Respectfully submitted,

VARNUM LLP
*Attorneys for Plaintiff and Counterclaim Defendant Heritage Guitar, Inc.*

Dated: April 14, 2021

Gary J. Mouw (P69236)
333 Bridge Street NW Suite 1700
Grand Rapids, MI 49504
(616) 336-6000
gjmouw@varnumlaw.com

and

By: */s/ Mark G. Matuschak*
Mark G. Matuschak
Vinita Ferrera
Allyson Slater

Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6559 (t)
(617) 526-5000 (f)
mark.matuschak@wilmerhale.com

Jared D. Hoffman
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007