UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HERITAGE GUITAR, INC.,

    Plaintiff,

v.

GIBSON BRANDS, INC.,

    Defendant.
_____/

Case No. 1:20-cv-229

Hon. Hala Y. Jarbou

## OPINION

This case began as a trademark infringement and breach of contract case. Plaintiff Heritage Guitar, Inc. brought suit seeking declaratory relief holding that it has neither infringed on Defendant Gibson Brands, Inc.'s intellectual property nor has it breached the settlement agreement between the two parties. Now Plaintiff seeks leave to file a Second Amended Complaint[1] ("SAC") with four additional causes of action under federal and state antitrust laws: (1) monopolization in violation of 15 U.S.C. § 2; (2) attempted monopolization in violation of 15 U.S.C. § 2; (3) monopolization in violation of Mich. Comp. Laws § 445.773; and (4) attempted monopolization in violation of Mich. Comp. Laws § 445.773. (ECF No. 84.) The motion will be granted.

### I. BACKGROUND

Both Plaintiff and Defendant produce guitars. Defendant's line of products features some of the most iconic electric guitars in the world, such as the Les Paul model. The parties have a shared history as Plaintiff was formed by former employees of Defendant in the 1980s when Defendant moved its operations from Kalamazoo, Michigan to Tennessee. Plaintiff remained in Kalamazoo to "carry on the tradition of hand-crafted guitar-making that started at Parsons Street

---

[1] Plaintiff filed its Amended Complaint to update certain redactions, without any substantive amendments. (*See* Proposed 2d Am. Compl., ECF No. 84-1, PageID.1517 n.2.)

in 1917." (Compl., ECF No. 1, PageID.58.)  Plaintiff began to manufacture guitars that resembled the designs of famous Gibson models.  Defendant accused Plaintiff of copying its designs and the parties litigated the issue in federal court and before the United States Trademark Trial & Appeal Board.  The litigation ended in 1991 when the two companies executed a confidential settlement agreement.  The settlement agreement required Plaintiff to make certain specific changes to its guitar designs but left other elements intact.  The settlement also permitted Plaintiff a reasonable degree of design freedom, so long as those future designs were not "closer in appearance to Gibson's registered and unregistered trademarks" than the Heritage guitars that led to the legal battle.  (1991 Settlement Agreement, ECF No. 22, PageID.133.)

Twenty-five years after the settlement, in February 2015, Defendant sent Plaintiff a cease-and-desist letter, stating that certain Heritage guitar designs violated Gibson's trademarked Les Paul body shape design and ES body shape design.  The record does not indicate whether Plaintiff responded to that letter, and it does not appear that Defendant took any further action.

In February 2019, Defendant sent another cease-and-desist letter, repeating the claim that Heritage guitars infringed the Les Paul and ES body shapes, which it alleged violated the 1991 settlement agreement.  Plaintiff replied in May, contending that the challenged models were not infringing and complied with the settlement agreement.  Defendant responded, reiterating its position, but stating its willingness to "settle this matter amicably" rather than go to court.  Nevertheless, Defendant also attached a draft complaint it was prepared to file in the Northern District of California should the issue remain unresolved.  (5/24/2019 Gibson Reply, ECF No. 53-4, PageID.728.)  The letter gave Plaintiff until June 7, 2019, to tell Gibson whether it would "agree to settle this matter without the need for litigation." (*Id.*, PageID.720.)  According to Plaintiff,

after a phone conference, "Gibson dropped the matter and Heritage heard nothing further for months." (Compl., PageID.67.)

At some point, the parties discussed a "collaboration relating to the redevelopment of the 225 Parsons Street building," where Defendant originally manufactured its guitars in Kalamazoo. (*Id.*) But, Plaintiff claims, Defendant "conditioned its participation in the project on [the] cessation of operations by Heritage." (*Id.*) Defendant argues it merely demanded compliance with the settlement agreement before proceeding further. Either way, Defendant sent a third cease-and-desist letter on February 20, 2020. The letter imposed a March 5 deadline for Plaintiff to "comply with the terms" of the settlement agreement and noted that failure to do so will leave Defendant with "no other choice but to seek remedy against [Heritage]." (2/20/2020 Letter, ECF No. 53-2, PageID.73.) On March 13, 2020, Plaintiff filed suit in this Court.

Plaintiff's Amended Complaint contained challenges to the validity of Defendant's trademarks. Defendant filed a motion to dismiss (ECF No. 43), which the Court granted in part and denied in part (ECF No. 58). The Court found that Plaintiff permanently waived the right to challenge the validity of Defendant's trademarks based on the 1991 Settlement Agreement and granted Defendant's motion on the counts related to that finding. Defendant then filed its answer and counterclaims. (ECF No. 62.)

Plaintiff alleges that following Defendant's counterclaims, in May 2021, Defendant terminated a profitable contract with Swee Lee, a Singaporean musical instrument and equipment distribution and retail platform, without cause. Swee Lee is a sister company to Plaintiff as they share a part owner, BandLab Technologies. Plaintiff alleges that Defendant is targeting Swee Lee in order to punish BandLab Technologies, Plaintiff's investor, to pressure Plaintiff out of the market.

3

Plaintiff brings its Motion for Leave to file a Second Amended Complaint in light of these events that occurred after it filed its initial and amended complaints seeking to add federal and state law antitrust claims against Defendant.

## II. STANDARD

### A. Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure permit a party to amend its pleading once as a matter of course within twenty-one days of service. Fed. R. Civ. P. 15(a)(1)(A). Afterwards, "[t]he court should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). A "district court may weigh the following factors when considering a motion to amend: undue delay or bad faith in filing the motion, repeated failures to cure previously-identified deficiencies, futility of the proposed amendment, and lack of notice or undue prejudice to the opposing party." *Knight Cap. Partners Corp. v. Henckel AG & Co.*, 930 F.3d 775, 786 (6th Cir. 2019). "When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001). Futility exists where "the pleading as amended could not withstand a motion to dismiss." *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992) (internal quotations marks omitted).

### B. Failure to State a Claim

To determine whether a pleading fails to state a claim, courts must ask whether the plaintiff has alleged "facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level,' and . . . 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plausible does not mean probable, but the standard "asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Where a plaintiff pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

On a motion to dismiss, courts must accept factual allegations as true, but will reject conclusory statements as "not entitled to the assumption of truth." *Id.* (citing *Twombly*, 550 U.S. at 555-56).  Hence, courts will ignore conclusory assertions and, accepting well-pled factual allegations as true, determine whether the allegations "plausibly give rise to an entitlement to relief." *Id.*  Determining the plausibility of a claim is a "context-specific" inquiry, "requiring the reviewing court to draw on its experience and common sense." *Id.*  If the Court decides that there is no plausible claim to relief, then the plaintiff has failed to state a claim.

### III. ANALYSIS

Defendant challenges Plaintiff's proposed amendments on every factor stated above.  The Court will address each in turn.

**A. Undue Delay**

Under the Case Management Order, the deadline to amend pleadings was September 15, 2021.  (ECF No. 74.)  Plaintiff filed this motion on July 21, 2021, almost two months before the deadline.  There also remain about seven months before the close of fact discovery and about nine months before the close of expert discovery proceedings.  Further, Defendant acknowledges that Plaintiff's request to amend is timely.  (Def.'s Br. in Opp'n to Heritage's Mot. for Leave to File a 2d Am. Compl., ECF No. 91, PageID.1628.)  Defendant argues that "merely because the request to amend is timely does not lead to the conclusion that Heritage did not delay in filing the request to amend," yet cites no authority to support this proposition.  Because Plaintiff filed this motion

5

before the deadline for amending pleadings, there is also no increased burden to show justification for failing to move earlier. Therefore, there is no undue delay.

### B. Undue Prejudice & Lack of Notice

"To deny a motion to amend, a court must find 'at least some significant showing of prejudice to the opponent.'" *Zigler v. Aukerman*, 512 F.3d 777, 786 (6th Cir. 2008) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986)). To determine what constitutes prejudice, "the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). That said, "when discovery is in the early stages, any prejudice from entertaining an amended pleading is minimal." *DeCrane v. Eckart*, No. 16-CV-2647, 2018 WL 3358654, at *2 (N.D. Ohio July 10, 2018).

Defendant's main argument that the proposed amendments would cause unfair prejudice is that they would "make this case much more complicated and require extensive discovery." (Def.'s Br. in Opp'n to Heritage's Mot. for Leave to File a 2d Am. Compl., PageID.1632.) This is the same concern Defendant raises for lack of notice. (*Id.*, PageID.1629.)

Courts have recognized that "'the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.'" *United States v. Marsten Apartments, Inc.*, 175 F.R.D. 257, 264 (E.D. Mich. 1997) (quoting *United States v. Continental Ill. Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir. 1989) (citing cases). For example, in *Janikowski v. Bendix Corp.*, 823 F.2d 845 (6th Cir. 1987), the parties had agreed to hold discovery in abeyance until the court disposed of the defendant's motion for summary judgment, and the plaintiff moved for leave to amend his complaint within the original deadline for the filing of motions. *Id.* at 951-52. The court found that there was no showing of

prejudice sufficient to preclude introducing a new claim due to the timing and that "the only claim of prejudice was that 'Bendix would . . . be put to the expense of conducting a second round of discovery.'" *Id.* The court distinguished cases where prejudice was found where the motion for leave to amend was filed after completion of discovery as "no such fact pattern is present here." *Id.* at 952 (citing cases); *see also Holland v. Metro. Life Ins. Co.*, No. 88-1347, 1989 WL 8994 (6th Cir. Feb. 3, 1989) (where the court declined to apply *Janikowski* because the plaintiff had filed her motion to amend weeks after the discovery cutoff date).

Here, the timing of Plaintiff's motion is earlier than the one in *Janikowski*. The plaintiff in *Janikowski* had filed his motion on the last day within the deadline. *Janikowski*, 823 F.2d at 951. Plaintiff here has filed two months prior to the deadline, with many months remaining in discovery. Defendant points to *Minor v. Northville Public Schools*, 605 F. Supp. 1185 (E.D. Mich. 1985), to argue that further expense and discovery is sufficient prejudice to deny a motion to amend. However, even in *Minor*, the court pointed to cases where motions to amend complaints were routinely denied when they "were filed well into or after completion of the discovery process." *Id.* at 1202. Because that fact pattern is not present here, the Court finds there is no undue or unfair prejudice.

### C. Bad Faith & Repeated Failures to Cure

Defendant claims that Plaintiff's motion to amend is a bad faith attempt to relitigate the validity of Gibson trademarks, which this Court has ruled on in the order on Defendant's motion to dismiss. Defendant argues that because Plaintiff may not challenge the validity of its marks and because "a valid trademark is granted a monopoly in the use of that trademark on the goods it has been used on," "any anti-competitive allegations based on litigation or cease and desist letters regarding Gibson's valid trademarks cannot form the factual basis for Heritage's monopolization or attempted monopolization claim." (Def.'s Br. in Opp'n, PageID.1630.)  This argument is

7

fallacious. A trademark owner could very well have a valid trademark yet utilize sham litigation as an anticompetitive weapon. *See infra* Part D.1. In that situation, such litigation could form the factual basis for anti-competitive allegations.

Defendant also argues that Plaintiff is challenging the validity of Gibson trademarks in its definition of the relevant market for monopolization. Claims under § 2 of the Sherman Act and the Michigan Antitrust Reform Act need to satisfy two elements, one of which requires Plaintiff to show "the possession of monopoly power [by the defendant] in a relevant market." *Conwood Co. v. U.S. Tobacco Co.,* 290 F.3d 768, 782 (6th Cir. 2002). Plaintiff defines the "relevant market" to be "(a) the market for premium solid-body single-cutaway electric guitars (the Premium SBSC Market) . . . and (b) the market for premium semi-hollow, double-cutaway electric guitars (the Premium SHDC Market)." (Proposed 2d Am. Compl., PageID.1552.)

Where Plaintiff describes market dynamics and the importance of the body shape of electric guitars to consumers, Defendant sees a disguised attack on the validity of Gibson trademarks for the body shape design of its guitars. In describing the importance of body shape, Plaintiff states,

> Body shape of electric guitars is about more than aesthetic appearance . . . Distinctive body shapes . . . are associated with particular guitarists, genres, and eras of music . . . . The body shape of the guitar also affects the playability of the instrument: how easy it is to sit and stand with, and the fret access.

(*Id.*, PageID.1553.) Defendant argues that this is a disguised claim that Gibson's body shape design trademarks are "functional or generic and enjoy non-reputational advantages." (Def.'s Br. in Opp'n, PageID.1630.) The Court declines to impute this interpretation to Plaintiff's description of the general market dynamics. Plaintiff has removed its claims challenging validity which were dismissed in the Court's March 10, 2021 Order. (ECF No. 58.) The Court does not see Plaintiff's Proposed SAC as a bad faith attempt to relitigate the issue.

8

Lastly, because this motion is Plaintiff's first attempt to add monopolization or attempted monopolization claims to its declaratory judgment complaint, it does not amount to a "repeated failure to cure deficiencies." This factor does not support denial of Plaintiff's motion for leave to amend.

**D. Futility**

Under § 2 of the Sherman Act, a monopolization claim must have two elements: "(1) possession of monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 402 (6th Cir. 2012) (citing *Tarrant Serv. Agency, Inc. v. Am. Standard, Inc.*, 12 F.3d 609, 613 (6th Cir. 1993)). For the second element, Plaintiff alleges that Defendant's counterclaims, cease and desist letters, and threats of litigation are objectively baseless sham litigation and, therefore, actionable exclusionary conduct. Plaintiff also points to Defendant's May 2021 contract termination with Swee Lee as coercive conduct and part of its overall anticompetitive scheme. Defendant challenges both these allegations of exclusionary conduct to argue that Plaintiff's proposed amendments are futile.

### 1. *Noerr-Pennington* Doctrine & the Sham Litigation Exception

The *Noerr-Pennington* Doctrine protects private actors from antitrust liability when exercising their First Amendment right to petition the government for redress. *See E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *Mine Workers v. Pennington*, 381 U.S. 657 (1965). *Noerr-Pennington* immunity extends to pre-litigation activities, such as cease-and-desist letters, filing court documents, and other legal proceedings. *See VIBO Corp. v. Conway*, 669 F.3d 675, 684 (6th Cir. 2012); *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 308 (N.D. Ohio 2021). Thus, an owner of a trademark has the right to protect its property

9

through litigation without exposing itself to antitrust liability. *Scooter Store, Inc. v. SpinLife.com, LLC*, 777 F. Supp. 2d 1102, 1114 (S.D. Ohio 2011) (citing *Cal. Motor Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)).

A narrow exception to this doctrine exists where immunity does not apply if the lawsuits are a "sham" and filed for the purpose of interfering with competition. *Ashley Furniture Indus., Inc. v. Am. Signature, Inc.*, No. 2:11-cv-427, 2015 WL 12999664, at *4 (S.D. Ohio Mar. 12, 2015) (citing *Static Control Components*, 697 F.3d at 408). For litigation to be a sham, "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Pro. Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 50 (1993). "Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Id.* "As long as there is an 'objectively reasonable' basis to litigate, a lawsuit or prelitigation activities 'cannot be a sham regardless of subjective intent.'" *J.M Smucker Co.*, 526 F. Supp. 3d at 308 (quoting *Ancestry.com Operations, Inc. v. DNA Diagnostics Ctr., Inc.*, No. 1:15-CV-737, 2016 WL 3999315, at *4 (S.D. Ohio July 26, 2016).

Defendant makes several arguments that its counterclaims are not objectively baseless: (1) Plaintiff's SAC sham litigation pleadings are merely conclusory; (2) under Defendant's interpretation of the 1991 Settlement Agreement, Plaintiff is unable to plead sufficient factual matter that would allow this court to infer that no reasonable litigant could realistically expect success on the merits; and, (3) Defendant's threats of litigation and counterclaims are directly tied to its valid trademarks and therefore its claims that Plaintiff is using its trademark cannot be objectively baseless. Plaintiff's SAC contains sixteen pages of factual allegations describing how Defendant's counterclaims are objectively baseless. (*See* Proposed 2d Am. Compl., PageID.1529-44.) In these pages, Plaintiff describes the contents of the 1991 Settlement Agreement in detail,

how its guitars are compliant with the Agreement, and how, by its terms, Defendant's counterclaims have no merit. This can hardly be considered conclusory. Further, Plaintiff addresses Defendant's interpretation and explains how this interpretation is also objectively baseless. (*Id.*, PageID.1536-38.) Defendant does not address these arguments substantively.

As to Defendant's argument that its counterclaims and threats of litigation are not objectively baseless because they are directly tied to valid trademarks, Defendant has not cited any authority for this broad proposition. On the contrary, courts have allowed antitrust claims to progress even where parties held valid trademarks and argued for *Noerr-Pennington* immunity. *See, e.g., Scooter Store*, 777 F. Supp. 2d at 1114-15; *Nabi Biopharmaceuticals v. Roxane Lab'ys, Inc.*, No. 2:05-CV-889, 2007 WL 894473 (S.D. Ohio Mar. 21, 2007).

Plaintiff has pled sufficient facts to support the sham litigation exception. Therefore, *Noerr-Pennington* immunity does not attach to Defendant at this stage of the litigation, and the SAC is not futile on this ground.

### 2. Application of the Sherman Act to Conduct with a Third Party

Lastly, Defendant argues that the proposed amendments are futile because the Sherman Act does not apply to Defendant's conduct with a foreign third-party. Defendant points to the Foreign Trade Antitrust Improvement Act which states,

> Sections 1 to 7 of this title shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless—
>
> (1) such conduct has a direct, substantial, and reasonably foreseeable effect—
>
>> (A) on trade or commerce which is not trade or commerce with foreign nations.

15 U.S.C. § 6a. Defendant contends that this Court cannot exercise jurisdiction over business activities involving the third-party because it is outside the United States and that Plaintiff has not

11

pled that Defendant's conduct with this third party has a "direct, substantial, and reasonably foreseeable effect" on domestic commerce.

Plaintiff alleges in its SAC that Defendant's termination of a profitable contract with Swee Lee was without cause, with the intent to drive Plaintiff from markets in the United States. Plaintiff alleges that there is a direct, substantial, and reasonably foreseeable effect on domestic commerce because Swee Lee and Plaintiff share a common investor. The damage to Swee Lee is designed to punish BLT, the common investor, so that it will pull Heritage from the relevant markets in the United States.

Accepting Plaintiff's factual allegations as true, Plaintiff's claim has facial plausibility that Defendant's conduct has a direct, substantial, and reasonably foreseeable effect on domestic commerce such that it would be actionable under the Sherman Act.

### IV. UNOPPOSED MOTION TO SEAL (ECF No. 81)

The Court will also address Plaintiff's Unopposed Motion to Seal (ECF No. 81), which the Court left pending in its July 22, 2021 Order (ECF No. 86). The Court granted Defendant's unopposed motion to seal documents (ECF No. 71) in its April 16, 2021 Order (ECF No. 75), subject to the caveat that "the proposed sealed exhibits, and the 1991 settlement agreement in particular, may well be subject to unsealing at a later date, should the realities of the litigation make it necessary." (ECF No. 75.) The Court finds that the realities of litigation make it necessary to unseal the 1991 Settlement Agreement.

"The public has a 'presumptive right . . . to inspect and copy judicial documents and files[,]' and '[o]nly the most compelling reasons can justify non-disclosure of judicial records.'" *Kiwewa v. Postmaster Gen. of U.S.*, No. 18-3807, 2019 WL 4122013, at *1 (6th Cir. Mar. 26, 2019) (alterations in original) (quoting *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016)). "When a district court relies upon a document 'in determining the

litigants' substantive rights, and in performing its adjudicatory function . . . [t]he common law presumption of public access' attaches to the document." *U.S. Filter/JWI, Inc. v. J-Parts, LLC*, No. 5:03-CV-127, 2017 WL 3574785, at *4 (W.D. Mich. Aug. 18, 2017) (citing *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 690 (W.D. Mich. 1996)). "A court's decision to seal a record is governed by a balancing test that generally favors public availability." *Id.* (citing *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)). When parties place material in the court record, "[t]he public has a strong interest in obtaining the information contained" therein. *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016). In cases such as "antitrust" cases, the public's interest is focused on both the result and the conduct giving rise to the case. *Id.* (citing *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983)). In those cases, "secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption." *Id.* "The public is entitled to assess for itself the merits of judicial decisions." *Id.*

Both this decision and the SAC have made references to the contents of the Settlement Agreement. Defendant raised a concern that making the agreement public will chill settlement negotiations between future litigants. That concern is unwarranted. First, there is a difference between "negotiating a settlement in the first instance and using court resources to implement [or interpret] a settlement that has already been agreed to." *In re S. Ohio Corr. Facility*, 24 F. App'x 520, 530 (6th Cir. 2001). The presumption of access applies where, as here, a party is using the terms of the settlement agreement in support of its right to relief. *Id.* And it is worth noting that Defendant raised the specter of an enforcement action before Plaintiff filed this case. Had Defendant brought such an action, it would have been forced to make the agreement public. Second, Plaintiff did not file its declaratory judgment action immediately after the parties entered

13

the agreement, potentially rendering its confidentiality provisions worthless. Instead, Defendant and Plaintiff have lived with, and benefitted from, a confidential agreement for thirty years. Further, it is unlikely that revealing a thirty-year-old agreement will prejudice Defendant's ability to negotiate such agreements with other parties. The settlement agreement does not provide much insight into Defendant's current willingness to settle such disputes. Therefore, the Court will not allow the Settlement Agreement to be sealed or references to it to be redacted from Plaintiff's amended complaint.

## V. CONCLUSION

For the reasons stated, the Court will grant Plaintiff's motion for leave to file a second amended complaint. The Court will deny Plaintiff's unopposed motion to seal.

Plaintiff requests that the Court order Defendant to answer the SAC. Because the Federal Rules require Defendant to respond after the amended complaint is filed, Plaintiff's request will be denied.

An order will enter consistent with this Opinion.

Dated:   December 13, 2021                         /s/ Hala Y. Jarbou
                                                   HALA Y. JARBOU
                                                   UNITED STATES DISTRICT JUDGE